**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MARCUS JOHNSON, ABRAHAM CHIU, CRYSTAL ALLEN, ANESSA GRAY, ZHICHENG ZHEN, AND KAREN ELIZABETH SIGURDSON, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

THE ALLSTATE CORPORATION,

Defendant.

Case No. 1:26-cv-2016

Judge Joan H. Lefkow

Magistrate Judge Jeannice W. Appenteng

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

# TABLE OF CONTENTS

Page


INTRODUCTION .......... 1

RELEVANT BACKGROUND .......... 2

ARGUMENT .......... 3

I. The Complaint Should Be Dismissed Because Plaintiffs Lack Article III Standing .......... 4

II. Plaintiffs Fail to State a Claim Under the Federal Wiretap Act. .......... 7

- A. Plaintiff's Claim for Unauthorized Interception Fails. .......... 7
- B. Plaintiffs' Claim for Unauthorized Divulgence Fails. .......... 10

III. Plaintiffs Fail to State a Claim Under the Illinois Eavesdropping Statute. .......... 12

- A. Plaintiffs' Illinois Eavesdropping Claim Fails Because They Have not Alleged any "Oral Communications." .......... 12
- B. Plaintiffs Have Not Alleged Any Liability Under the Statute's Other Provisions as Required to Bring a Claim Under Section 5/14-2(a)(5). .......... 13

IV. Plaintiffs Fail to State a Claim Under the Illinois Consumer Fraud and Deceptive Business Practices Act. .......... 14

- A. Plaintiffs Fail to Allege Any "Personal Information" as Required for an IPIPA Violation .......... 14
- B. Plaintiffs Fail to Meet the Heightened Pleading Standard for a Claim of Deceptive Practices Under the CFDPA. .......... 15
- C. Plaintiffs Fail to Plead Actual Damages. .......... 15

V. Plaintiffs Fail to State a Claim Under the California Invasion of Privacy Act. .......... 17

- A. Plaintiffs' Claim Under Cal. Pen. Code § 631 Fails. .......... 17
- B. Count VI - Plaintiffs' Claim Under Cal. Pen. Code § 632 Fails. .......... 19
- C. Plaintiffs' Claim Under Cal. Pen. Code § 638.51 Fails. .......... 20

VI. Plaintiffs Fail to State a Claim Under the California Unfair Competition Law. .......... 22

VII. Plaintiffs Fail to State a Claim for Breach of Contract. .......... 23

CONCLUSION .......... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .....3

*B.K. v. Desert Care Network*,
No. 2:23-cv-05021 SPG (PDX), 2024 WL 1343305 (C.D. Cal. Feb. 01, 2024) .....19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .....3

*Bell v. City of Country Club Hills*,
841 F.3d 713 (7th Cir. 2016) .....4

*Benson v. Fannie May Confections Brands, Inc.*,
944 F.3d 639 (7th Cir. 2019) .....15

*Best v. Malec*,
No. 09 C 7749, 2010 WL 2364412 (N.D. Ill. June 11, 2010) .....5, 6

*Boulton v. Community.com, Inc.*,
No. 23-3145, 2025 WL 314813 (9th Cir. Jan. 28, 2025) .....20

*Branham v. TrueAccord Corp.*,
No. 22 CV 00531, 2023 WL 2664010 (N.D. Ill. Mar. 28, 2023) ..... 6-7

*Bunnell v. Motion Picture Ass'n of Am.*,
567 F. Supp. 2d 1148 (C.D. Cal. 2007) .....18

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
916 F.3d 589 (7th Cir. 2019) .....3

*Dinerstein v. Google, LLC*,
73 F. 4th 502 (7th Cir. 2023) ..... 4-5

*Doe 1 v. Chestnut Health Sys., Inc.*,
No. 1:24-cv-01475-JEH-RLH, 2025 WL 1616635 (C.D. Ill. June 6, 2025) .....8, 9, 10, 14

*Doe v. Deaconess Ill. Union Cnty. Hosp., Inc.*,
No. 3:24-CV-02284-NJR, 2025 WL 2771415 (S.D. Ill. Sept. 29, 2025) ..... 11-14, 16, 24

*Doe v. Genesis Health Sys.*,
No. 4:23-cv-04209-JEH, 2025 WL 1000192 (C.D. Ill. Mar. 18, 2025) .....10

*Dugas-Filippi v. JP Morgan Chase, N.A.*,
66 F. Supp. 3d 1079 (N.D. Ill. 2014) ....................23

*In re Facebook Privacy Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) ....................23

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................23

*Flores v. Aon Corp.*,
2023 IL App (1st) 230140.................... 15-16

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ....................18

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)....................8

*In re Google Inc. Gmail Litig.*,
No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ....................10

*Griffith v. TikTok*,
Inc., 697 F. Supp. 3d 963, 976 (C.D. Cal. 2023) ....................22

*Hannant v. Culbertson*,
No. 4:24-cv-04164-SLD-RLH, 2025 WL 2413894 (C.D. Ill. Aug. 20, 2025)......11, 15, 16, 24

*Hazel v. Prudential Fin., Inc.*,
No. 22-cv-07465-CRB, 2023 WL 3933073 (N.D. Cal. June 9, 2023) .................... 22-23

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .................... 21-22

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) .................... 18-19

*Hughes v. Dave & Buster's Ent., Inc.*,
No. 25STCV10250, 2025 WL 2996811 (Cal. Super. July 16, 2025).................... 20-21

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ....................17

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .................... 5-6

*Khorloo v. John C. Heath Att'y at L., PLLC*,
No. 18-cv-01778, 2020 WL 1530735 (N.D. Ill. Mar. 31, 2020) ....................16

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025)....................................21

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) ........................................................... 8, 11, 15-16

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) .....................................................................9, 16

*L.C. v. Fertility Ctrs. of Ill., PLLC*,
25 C 2049, 2025 WL 3514494 (N.D. Ill. Dec. 8, 2025) ..................................................6

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ..........................................................................19

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ..........................................................................18

*LKQ Corp. v. Thrasher*,
785 F. Supp. 2d 737 (N.D. Ill. 2011) ..............................................................................23

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)...........................................................................18

*Mitchener v. CuriosityStream, Inc.*,
815 F. Supp. 3d 845 (N.D. Cal. 2025) ............................................................................21

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ............................................................................................6

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC*,
2 F. 4th 1002 (7th Cir. 2021) ..............................................................................................4

*Preferred Enteral Sys., Inc. v. Cent. Home, Inc.*,
277 Ill. App. 3d 414 (1st Dist. 1995) ......................................................................... 23-24

*Pucillo v. Nat'l Credit Sys., Inc.*,
66 F. 4th 634 (7th Cir. 2023) ..............................................................................................5

*In re Recalled Abbott Infant Formula Prods. Liab. Litig.*,
97 F.4th 525 (7th Cir. 2024) ...............................................................................................6

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ....................................10

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025)..................................21

*Silha v. ACT, Inc.*,
807 F. 3d 169 (7th Cir. 2015) ....................7

*Smith v. Loyola Univ. Med. Ctr.*,
No. 23 CV 15828, 2024 WL 3338941 (N.D. Ill. July 9, 2024) ....................6

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................4

*St. Johns Vein Ctr., Inc. v. StreamlineMD, LLC*,
347 F. Supp. 3d 1047 (M.D. Fla. 2018)....................11

*Stein v. Edward-Elmhurst Health*,
No. 23-cv-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025), *motion to certify appeal granted*, 2026 WL 594752 (N.D. Ill. Mar. 3, 2026) ....................12

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ....................17

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
No. 24 C 2110, 2024 WL 4367849 (N.D. Ill. Oct. 1, 2024)....................22

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................4

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)....................17

*Zak v. Bose Corp.*,
No. 17-cv-02928, 2019 WL 1437909 (N.D. Ill. Mar. 31, 2019) ....................8

**Statutes**

720 ILCS 5/14-1(d)....................12

720 ILCS 5/14-2(a)(1) .................... 13-14

720 ILCS 5/14-2(a)(2) .................... 12-13

720 ILCS 5/14-2(a)(3) .................... 13-14

720 ILCS 5/14-2(a)(4) .................... 13-14

720 ILCS 5/14-2(a)(5) .................... 13-14

815 ILCS 530/5.................... 14-15

815 ILCS 530/45.................... 14-15

18 U.S.C. § 2510(4) ....................21

18 U.S.C. § 2510(15) ....................10

18 U.S.C. § 2511 ....................7

18 U.S.C. § 2511(1)(a) ....................7

18 U.S.C. § 2511(1)(c)-(d) ....................7

18 U.S.C. § 2511(2)(d) .................... 7-9

18 U.S.C. § 2511(3)(a) ....................10

Cal. Pen. Code § 631(a) ....................17

Cal. Pen. Code § 631(a)(1) .................... 17-18

Cal. Pen. Code § 631(a)(2) .................... 17-18

Cal. Pen. Code § 631(a)(3) ....................17, 19

Cal. Pen. Code § 631(a)(4) ....................17, 19

Cal. Pen. Code § 632 ....................19

Cal. Pen. Code § 632(a) ....................19

Cal. Pen. Code § 632(c) ....................20

Cal. Pen. Code § 638.50 ....................21

Cal. Pen. Code § 638.51 .................... 20-22

Cal. Pen. Code § 638.51(a) .................... 20-22

California Unfair Competition Law ("UCL") ....................1, 3, 22

Gramm-Leach-Bliley Act ....................9

Illinois Consumer Fraud and Deceptive Trade Practices Act ("CFDPA") .................... 1, 3, 14-16

**Other Authorities**

Fed. R. Civ. P. § 9(b) ....................15

Fed. R. Civ. P. § 12(b)(1) ....................1, 4

Fed. R. Civ. P. § 12(b)(6) ....................1, 3

Defendant The Allstate Corporation ("Allstate") moves to dismiss Plaintiffs' Consolidated Class Action Complaint for lack of standing and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

## INTRODUCTION

Plaintiffs claim they used Allstate's website to get an insurance quote and "on information and belief," were shown a cookie banner during their website visit through which they *may have* opted out of third-party trackers and cookies. Because some Plaintiffs later received unspecified "targeted advertising," Plaintiffs allege that the scant data they entered into the website—names, zip code, car description, pages viewed, and IP address—*may have* been shared with third parties. Plaintiffs do not allege that Allstate was the only website they visited or explain how their alleged injuries can be traced specifically to visiting Allstate's website.

On these conjectural allegations, Plaintiffs allege putative class claims under the Federal Wiretap Act, Illinois Eavesdropping Statute, Illinois Consumer Fraud and Deceptive Business Practices Act, California Invasion of Privacy Act, California Unfair Competition Law, and for breach of contract. Each claim fails and should be dismissed.

Plaintiffs cannot establish standing because they do not allege actual, concrete damage, relying instead on speculative harms such as emotional distress, "erosion of the confidential nature of the insurer-insured relationship," and loss of privacy in basic information that was not private. Plaintiffs' claims alleging wiretapping, interception, and eavesdropping fail because Allstate was a party to the alleged communications. Plaintiffs intentionally entered information into Allstate's website intending to send it to Allstate—Allstate did not "intercept" or "eavesdrop" on any communication. And Plaintiffs' privacy-based claims fail because Plaintiffs cannot establish a reasonable expectation of privacy in the basic information they intentionally entered into Allstate's

website to get an insurance quote. Because Plaintiffs fail to sufficiently plead their claims, the Court should dismiss Plaintiffs' Complaint with prejudice.

**RELEVANT BACKGROUND**

Allstate is a provider of insurance. *See* Compl. [Dkt. No. 18] ¶ 18. The named Plaintiffs used the website www.allstate.com (the "Website") to search and apply for insurance. *Id.* ¶¶ 12–17, 24. When visiting the Website, each Plaintiff first saw a cookie banner that disclosed:

> "By visiting our website, you consent to our use of cookies and other tracking technologies as described in our privacy statement."

*Id.* ¶ 46. Plaintiffs allege, "on information and belief," that after clicking the "More Information" button, they were presented with a second cookie window that offered a choice to opt-out of targeted advertising, and claim that, consistent with their normal practice of routinely declining cookies, they selected that option. *Id.* ¶¶ 45, 79, 89, 99, 108, 116, 126. The second cookie window stated, in part, "We collect personal information about users over time and across different websites when you use this website or service. We also have third party advertising partners that collect personal information this way. We use several common tracking tools to do this, including browser cookies, web beacons, and similar technologies." *Id.* ¶ 47. It also makes clear that "Functional and performance cookies," which may be set "by third party providers whose services we have added to our website," cannot be turned off. *Id*. Plaintiffs claim that despite their selections, the Website installed cookies and trackers from third parties such as Adobe, Meta/Facebook, Pinterest, and Google (the "Third Parties"). *Id.* ¶ 49.

These third-party trackers and cookies allegedly collected "private, sensitive, and confidential information." *Id.* ¶ 58. Specifically, Plaintiffs claim that the information disclosed to Third Parties includes (1) a unique identifier tied to the visitor, such as an IP address or cookie, (2) the visitor's first and last name, (3) the visitor's zip code, (4) the visitor's state, (5) the assets that

the visitor is seeking to insure (i.e., automobile, condo, motorcycle), (6) whether the visitor rents or owns their home, (7) the specific insurance products for which the visitor is shopping, and (8) pages viewed and buttons clicked. *Id.* ¶ 60. For Website visitors seeking car insurance, Plaintiffs allege that Allstate collects information about the visitor's insurance, age, prior accidents, defensive driving record, military service, and vehicle information. *Id.* ¶ 61. The only reason Plaintiffs offer for believing that any information was shared with Third Parties is that, after using the Website, some of them began seeing "targeted advertising" on Facebook and/or Instagram. *Id.* ¶¶ 80, 90, 100, 117, 127. Plaintiffs do not state what information was contained in these ads or allege that Allstate's Website was the only website they visited.

Based on these allegations, Plaintiffs assert nine causes of action: (1) and (2) violations of the Federal Wiretap Act; (3) violation of the Illinois Eavesdropping Statute; (4) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act; (5), (6) and (7) violations of California's Invasion of Privacy Act; (8) violation of California's Unfair Competition Law; and (9) breach of contract. Each claim fails and should be dismissed.

## ARGUMENT

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must (1) describe the claim in sufficient detail to give the defendant fair notice of the claim and grounds on which it rests, and (2) contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019) (citations omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, the complaint's factual allegations must be enough to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "detailed factual allegations" are not required, the complaint requires

"more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell v. City of Country Club Hills*, 841 F.3d 713, 717 (7th Cir. 2016) (citation omitted).

For a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) involving a facial attack for lack of subject-matter jurisdiction based on lack of standing, the Court must determine "whether the allegations, taken as true, support an inference that the elements of standing exist." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F. 4th 1002, 1007 (7th Cir. 2021) (citation omitted).

## I. The Complaint Should Be Dismissed Because Plaintiffs Lack Article III Standing.

Subject-matter jurisdiction requires Article III standing, which demands that Plaintiffs "suffered an injury in fact." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (citation omitted). Concrete harms are typically tangible, meaning physical or monetary. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Certain intangible harms may suffice if they bear "a close relationship to harms traditionally recognized as providing a basis for lawsuits." *Id.* But a statutory right to sue does not confer standing: "[a]n uninjured plaintiff . . . is, by definition, not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's 'compliance with regulatory law' (and, of course, to obtain some money via the statutory damages)." *Id.* at 427–28 (citation omitted).

First, Plaintiffs allege injury based on loss of privacy for "sensitive" data. *See* Compl. ¶¶ 8, 87, 97, 106, 114, 124, 133. When a plaintiff asserts an intangible harm, the court assesses whether the alleged injury has "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Dinerstein v. Google, LLC*, 73 F. 4th 502, 511 (7th Cir.

2023) (citation omitted). The invasion of privacy can constitute a concrete harm and encompasses four theories of wrongdoing: "intrusion upon seclusion, appropriation of a person's name or likeness, publicity given to private life, and publicity placing a person in a false light." *Pucillo v. Nat'l Credit Sys., Inc.*, 66 F. 4th 634, 639–40 (7th Cir. 2023) (citation omitted). Plaintiffs do not allege appropriation or publicity placing a person in a false light. Intrusion upon seclusion "occurs when a person 'intrudes . . . upon the solitude or seclusion of another or his private affairs or concerns' and this 'intrusion would be highly offensive to a reasonable person.'" *Id.* at 640 (citations omitted). A claim for public disclosure of private facts requires that: "(1) publicity was given to the disclosure of private facts; (2) the facts were private and not public facts; and (3) the matter made public would be highly offensive to a reasonable person." *Best v. Malec*, No. 09 C 7749, 2010 WL 2364412, at *4 (N.D. Ill. June 11, 2010) (citation omitted). Thus, Plaintiffs must establish that the purported information disclosed involved private facts and the purported intrusion "would be highly offensive to a reasonable person."

Generally, "private facts" are intimate and personal facts such as health issues or those that are "facially revealing, compromising, or embarrassing." *Best*, 2010 WL 2364412, at *5 (citation omitted). "Matters of public record such as a person's name, address, date of birth, and fact of marriage, have been held not to be private facts." *Id.* Plaintiffs allege that the information disclosed was first and last names, zip code and state, car/home ownership, insurance products sought, pages viewed, and IP addresses. *See* Compl. ¶¶ 84, 94, 103, 111, 121, 130. None of this alleged information constitutes intimate or personal facts that are "facially revealing, compromising, or embarrassing." Nor is the purported disclosure of any such facts highly offensive to a reasonable person. Indeed, much of the alleged information—names, zip codes, pages viewed, and IP addresses—are either matters of public record or do not concern private matters. *See, e.g.*,

*Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) (dismissing for lack of Art. III standing where IP address was disclosed); *Popa v. Microsoft Corp.*, 153 F.4th 784, 786, 791 (9th Cir. 2025) (dismissing for lack of Art. III standing because plaintiff alleged the disclosure of interactions with a website and her street name, city, and state was collected). The ownership of a car or home and the type of insurance sought also do not constitute intimate facts that are in any way "facially revealing, compromising, or embarrassing." *See Best*, 2010 WL 2364412, at *5 (citation omitted); *cf L.C. v. Fertility Ctrs. of Ill., PLLC*, 25 C 2049, 2025 WL 3514494, at *5 (N.D. Ill. Dec. 8, 2025) (disclosure of private health information sufficient for Article III standing); *Smith v. Loyola Univ. Med. Ctr.*, No. 23 CV 15828, 2024 WL 3338941, at *4 (N.D. Ill. July 9, 2024) (disclosure of sensitive medical information sufficient for Article III standing).

Plaintiffs additionally allege injuries based on the erosion of the confidential nature of the insurer-insured relationship, the taking of something of value from Plaintiffs, Plaintiffs' loss of full value for the insurance services for which they paid (which included a promise regarding confidentiality), diminished value of personal information, risk of harm from disclosure of personal information, the potential for higher insurance rates or denial of insurance coverage, embarrassment, humiliation, frustration, and emotional distress. Compl. ¶¶ 8, 87, 97, 106, 114, 124, 133. These alleged injuries are also insufficient to establish standing.

The erosion of the confidential nature of the insurer-insured relationship, risk of harm from disclosure of personal information, the potential for higher insurance rates or insurance denial, embarrassment, humiliation, frustration, and emotional distress are precisely the types of non-concrete, speculative injuries which are insufficient to establish Article III standing. *See, e.g.*, *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 529 (7th Cir. 2024) (finding "risk-of-harm theory of injury does not support Article III standing"); *Branham v. TrueAccord*

*Corp.*, No. 22 CV 00531, 2023 WL 2664010, at *3 (N.D. Ill. Mar. 28, 2023) (holding psychological harms insufficient for Article III standing). Furthermore, Plaintiffs' alleged loss of value for insurance services is baseless; Plaintiffs do not allege they could have bargained for lower prices by consenting to share information. And the purported diminution of their information's value is speculative—Plaintiffs never attempted to sell it and allege they never intended to. *See* Compl. ¶¶ 83, 93, 102, 110, 120, 129. Their allegation that Allstate "took" something of value likewise fails because "injury in fact cannot be based solely on a defendant's gain" but "must be based on a plaintiff's loss." *Silha v. ACT, Inc.*, 807 F. 3d 169, 174–75 (7th Cir. 2015).

Because Plaintiffs fail to allege the concrete injury required to establish Article III standing, this Court lacks jurisdiction and the Complaint should be dismissed.

## II. Plaintiffs Fail to State a Claim Under the Federal Wiretap Act.

Plaintiffs assert claims under the Federal Wiretap Act, 18 U.S.C. § 2511, for unauthorized interception (Count I) and unauthorized divulgence (Count II). Compl. ¶¶ 157–81. Both fail.

### A. Plaintiffs' Claim for Unauthorized Interception Fails.

Count I alleges that Allstate, by using cookies and tracking technologies on the Website, intercepted, disclosed, and used Plaintiffs' electronic communications in violation of § 2511(1)(a) and § 2511(1)(c)–(d) of the Federal Wiretap Act. Compl. ¶¶ 164–68. This claim fails because Allstate was a party to the purported communications and the crime-tort exception does not apply.

#### i. Plaintiffs' unauthorized interception claim fails because Allstate was a party to the purported communications.

Section 2511(2)(d) provides that "[i]t shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication." Thus, an intentional wiretapping claim requires invading

a communication to which one is *not* a party; "the relevant inquiry is whether the defendant is a participant in the conversation, as opposed to a non-participant that uses other means to gain access to—i.e., intercept—the communication." *Zak v. Bose Corp.*, No. 17-cv-02928, 2019 WL 1437909, at *3 (N.D. Ill. Mar. 31, 2019) (citing *U.S. v. Pasha*, 332 F.2d 193, 198 (7th Cir. 1964)).

Plaintiffs repeatedly allege that their communications are the information they disclosed during their visit to Allstate's own website and server. *See, e.g.*, Compl. ¶¶ 3–5, 160. Thus, Allstate, as the intended recipient of that information, is a party to those alleged communications. *See Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 938 (N.D. Ill. 2023) ("The question here [is] . . . who the intended recipient of the communication was. The Court concludes that Rush—and not Facebook, Google, or Bidtellect—was the intended recipient of the allegedly intercepted communications here. Rush is therefore a party to those communications and cannot be liable under the Wiretap Act for its alleged interception of them, if such an interception even occurred.").[1]

Indeed, courts have repeatedly dismissed Federal Wiretap Act claims in similar data privacy cases involving purported third-party disclosures on mobile applications and websites where the defendant was a party to the communications. *See, e.g.*, *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 140–42 (3d Cir. 2015) (applying party exception where browsers sent the relevant communication directly to the defendant's servers); *Kurowski*, 659 F. Supp. 3d at 934, 938 (applying party exception to website that transmitted data to third-party advertisers because defendant's website was the intended recipient). Plaintiffs' Federal

[1] *See also Doe 1 v. Chestnut Health Sys., Inc.*, No. 1:24-cv-01475-JEH-RLH, 2025 WL 1616635, at *11 (C.D. Ill. June 6, 2025) ("[A]ll of the electronic communications alleged intercepted by the Defendant in violation of the [Federal Wiretap Act] could not have occurred without the Plaintiffs communicating with the other intended recipient, and party, CHS. Those facts make CHS—necessarily—a 'party to the communication[s]' in this case and under § 2511(2)(d).").

Wiretap Act claim fails because Allstate was the intended recipient of the purported communications.

**ii. The crime-tort exception does not apply.**

To evade this bar, Plaintiffs invoke the crime-tort exception to Section 2511(2)(d), which removes the party exemption when "such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Plaintiffs allege—without specificity—that Allstate intercepted communications "for the purpose of committing a tortious act in violation of the Constitution or laws of the United States or of any State, including invasion of privacy, violation of the [Gramm-Leach-Bliley Act], and others," and breached a fiduciary duty. Compl. ¶¶ 169, 174. They also allege Allstate used the communications to increase profit margins, save on marketing costs, and achieve financial gain. *Id.* ¶¶ 170–71.

However, "[i]t is well established that [the crime-tort exception] only applies where the defendant allegedly committed a tortious or criminal act independent from the act of recording itself." *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 844 (N.D. Ill. 2023). Thus, to survive a motion to dismiss, Plaintiffs must plead "sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act ***that is independent of the intentional act of [interception]***." *Doe 1*, 2025 WL 1616635, at *12 (alteration in original) (emphasis added) (citation omitted). Plaintiffs fail to do so, beyond conclusory allegations that Allstate's purpose was tortious or criminal. Indeed, all the purported tortious or criminal acts that Plaintiffs allege are related to the alleged interception. *See*, *e.g.*, Compl. ¶ 76 (alleging violation of the Gramm-Leach-Bliley Act based on the interception of information).

Allegations that Allstate used communications to increase profit margins and save on marketing costs also do not trigger the exception. Sharing information "for the purpose of creating

targeted online advertisements and enhanced marketing services" is not tortious or criminal. *Doe 1*, 2025 WL 1616635, at *12; *see also Doe v. Genesis Health Sys.*, No. 4:23-cv-04209-JEH, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025) ("By Plaintiff's own account, the 'trackers' were 'used by the Defendant to benefit Genesis Health and its marketing and advertising purposes,' . . . not for the purpose of knowingly committing a violation of the HIPAA."); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021) (crime-tort exception inapplicable where Google's alleged interception was financially motivated); *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) ("[T]he tort or crime exception cannot apply where the interceptor's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money.'" (citation omitted)). Count I should be dismissed because Allstate was a party to the communications and Plaintiffs have not pled facts triggering the crime-tort exception.

**B. Plaintiffs' Claim for Unauthorized Divulgence Fails.**

Count II asserts a claim under Section 2511(3)(a), which provides that "a person or entity ***providing an electronic communication service to the public*** shall not intentionally divulge the contents of any communication." 18 U.S.C. § 2511(3)(a) (emphasis added). This claim should be dismissed because the Website is not an "electronic communication service"—defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). "Properly interpreted, [section] 2510(15) does not transform every business or entity that merely uses an electronic communication service in its business operations into a provider of an electronic communication service." *Genesis Health Sys.*, 2025 WL 1000192, at *9–10.

Plaintiffs contend the Website is an "electronic communication service" because "it provides users the ability to send or receive electronic communications" by allowing them to

search for insurance, apply for quotes, pay premiums, and file claims. Compl. ¶ 177. Plaintiffs' theory fails because there is no allegation that the Website served as any sort of communication service, such as providing email, internet, or telecommunication services, which the Federal Wiretap Act requires to be considered an "electronic communication service." *See St. Johns Vein Ctr., Inc. v. StreamlineMD, LLC*, 347 F. Supp. 3d 1047, 1064 (M.D. Fla. 2018) ("[T]he 'majority of courts addressing [the statute's scope] interpret the [Wiretap Act] to encompass only traditional 'electronic communications services' such as internet service providers, electronic mail providers, telecommunications companies, and remote computing services.'" (second alteration in original) (citation omitted)).

Courts have repeatedly found that merely operating a website where users input information is insufficient. *See Hannant v. Culbertson*, No. 4:24-cv-04164-SLD-RLH, 2025 WL 2413894, at *6 (C.D. Ill. Aug. 20, 2025) (rejecting argument that website is electronic communications service because plaintiff did not allege it facilitated two-way communications with third parties); *Doe v. Deaconess Ill. Union Cnty. Hosp., Inc.*, No. 3:24-CV-02284-NJR, 2025 WL 2771415, at *12 (S.D. Ill. Sept. 29, 2025) (operating a website does not make healthcare provider an electronic communications service). In *Kurowski*, the court found that an internet platform that allowed patients to send communications to their providers "cannot plausibly be considered an electronic communications service provider within the meaning of the Act." *Kurowski*, 659 F. Supp. 3d at 939. Like the patient platform in *Kurowski*, the Website allows users to send information to Allstate to obtain an insurance quote. Allstate is not an internet service provider or e-mail service, and the Website does not allow users internet or email access. Plaintiffs' broad reading would transform every website into an "electronic communications service,"

massively and unjustifiably expanding the scope of Section 2511(3)(a) of the Wiretap Act. Count II should be dismissed with prejudice.

## III. Plaintiffs Fail to State a Claim Under the Illinois Eavesdropping Statute.

Count III alleges that Allstate violated the Illinois Eavesdropping Statute (720 ILCS 5/14, *et seq.*) by using cookies and tracking technologies to "secretly record, disclose, and transmit Plaintiffs' and Class Members' private communications to hidden third parties." Compl. ¶ 194. Under the relevant portions of the Illinois Eavesdropping Statute (720 ILCS 5/14),[2] defendants commit eavesdropping when they knowingly and intentionally:

> (a)(2): Use[] an eavesdropping device, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party unless he or she does so with the consent of all other parties to the private conversation; [or]
>
> (a)(5): Use[] or disclose any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of this Article, unless he or she does so with the consent of all of the parties.

### A. Plaintiffs' Illinois Eavesdropping Claim Fails Because They Have not Alleged any "Oral Communications."

Plaintiffs' claim under 720 ILCS 5/14(a)(2) fails because they have not alleged a "private conversation" was transmitted or recorded. A "private conversation" means "***oral communication*** between 2 or more persons." 720 ILCS 5/14-1(d) (emphasis added). Because Plaintiffs have not alleged transmission or recording of any oral conversation, their Section 5/14-2(a)(2) claim should be dismissed. *See Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 WL 580556, at *7 (N.D. Ill. Feb. 21, 2025), *motion to certify appeal granted*, 2026 WL 594752 (N.D. Ill. Mar. 3, 2026) (dismissing claim because "[o]nly 'oral' communications count"); *see also Deaconess*, 2025

[2] The Complaint incorrectly cites the Illinois Eavesdropping statute, leaving it unclear which provisions Plaintiffs are invoking, but based on the provisions quoted, it appears their claim is under Sections 5/14(a)(2) and (a)(5). *See* Compl. ¶¶ 183–84.

WL 2771415, at *7 (dismissing claim based on tracking technologies because plaintiff did not allege "oral communication").

**B. Plaintiffs Have Not Alleged Any Liability Under the Statute's Other Provisions as Required to Bring a Claim Under Section 5/14-2(a)(5).**

Section 5/14-2(a)(5) creates liability for eavesdropping when a party "[u]ses or discloses any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of this Article." Because Plaintiffs do not allege Allstate disclosed information from an oral conversation, they cannot base their claim on a "private conversation." But even assuming Allstate used information from a "private electronic communication," Plaintiffs still fail to state a claim.

Section 5/14-2(a)(5) "does not simply prohibit the use or disclosure of information from private electronic communications. It prohibits the use or disclosure of information from private electronic communications 'obtained . . . ***in violation of this Article***.'" *Stein*, 2025 WL 580556, at *7 (emphasis added) (citation omitted). Accordingly, Plaintiffs must sufficiently allege that Allstate violated a provision of Section 5/14-2(a)(1)–(a)(4) to establish a claim under Section 5/14-2(a)(5). Sections 5/14-2(a)(1) and (a)(3) address communications to which the defendant was ***not*** a party—inapplicable here. *See* Section II(A)(i), *supra*. And as discussed, Plaintiffs fail to state a claim under Sections 5/14-2(a)(2), which requires eavesdropping on a private, *oral* conversation.

That leaves Section 5/14-2(a)(4), which prohibits knowingly and intentionally:

> [m]anufactur[ing], assembl[ing], distribut[ing], or possess[ing] any electronic, mechanical, eavesdropping, or other device knowing that or having reason to know that the design of the device renders it primarily useful for the purpose of the surreptitious overhearing, transmitting, or recording of private conversations or the interception, or transcription of private electronic communications and the intended or actual use of the device is contrary to the provisions of this Article.

But tracking technologies on a website do not violate Section 5/14-2(a)(4). *See Deaconess*, 2025 WL 2771415, at *7 n.2 (tracking technologies insufficient to trigger Section 5/14-2(a)(4),

which only "applies to the production, distribution, and possession of eavesdropping 'device[s]'"). Moreover, Section 5/14-2(a)(4), like Section 5/14-2(a)(5), requires not just the possession of an eavesdropping device but that its intended use be "contrary to the provisions of this Article." Because Plaintiffs cannot state a claim under any other provision, their claim fails even if the trackers constitute eavesdropping devices. Absent a sufficiently alleged violation of Sections 5/14-2(a)(1)–(a)(4), Plaintiffs' Section 5/14-2(a)(5) claim must be dismissed. *See Doe 1*, 2025 WL 1616635, at *10 (dismissing Section 5/14-2(a)(5) claim because plaintiff failed to allege violation of Section 5/14-2(a)(1)–(a)(4)).

## IV. Plaintiffs Fail to State a Claim Under the Illinois Consumer Fraud and Deceptive Business Practices Act.

Plaintiffs allege Allstate violated the Illinois Consumer Fraud and Deceptive Trade Practices Act ("CFDPA") by (1) encouraging consumers to use its website and representing it would protect their privacy while sharing their information with third parties, and (2) promising not to share information with third parties while enabling them to intercept it. Compl. ¶ 207. They also allege Allstate violated the Illinois Personal Information Protection Act ("IPIPA"), which they contend constitutes an unlawful practice under the CFDPA. *Id.* ¶ 215.

### A. Plaintiffs Fail to Allege Any "Personal Information" as Required for an IPIPA Violation

In an attempt to create CFDPA liability, Plaintiffs allege Allstate violated IPIPA, which requires that a "data collector that owns or licenses . . . records ***that contain personal information*** concerning an Illinois resident" to "implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, destruction, use, modification, or disclosure." 815 ILCS 530/45 (emphasis added). "Personal information," in relevant part, means "an individual's first name or first initial and last name" only "in combination with" data elements like "(A) social security number[;] (B) Driver's license number or State identification card

number[;] (C) Account number or credit or debit card number . . .[;] (D) Medical information; (E) Health insurance information; (F) Unique biometric data . . ." 815 ILCS 530/5.

Plaintiffs allege they input their first and last name, location, car/home ownership, insurance products sought, pages viewed, and IP address. *See* Compl. ¶¶ 84, 94, 103, 111, 121, 130. Because this information is not "personal information" under IPIPA, Plaintiffs cannot rely on an IPIPA violation to establish their CFDPA claim.

### B. Plaintiffs Fail to Meet the Heightened Pleading Standard for a Claim of Deceptive Practices Under the CFDPA.

A CFDPA claim requires: "(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Kurowski*, 659 F. Supp. 3d at 941–42 (citation omitted). Deceptive conduct allegations must satisfy Rule 9(b)'s heightened pleading standard. *Hannant*, 2025 WL 2413894, at *8. Plaintiffs must "plead with particularity the circumstances constituting fraud or mistake"—the "'who, what, when, where, and how' of the alleged fraud." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (quoting Fed. R. Civ. P. 9(b)). The Complaint contains only bare allegations that Plaintiffs may have been presented with a cookie banner "on information and belief" and that certain information may have been disclosed to third parties "on information and belief." Critically, Plaintiffs do not allege *when* they input information into the Website. Compl. ¶¶ 78–133. This lack of specificity falls far short of Rule 9(b).

### C. Plaintiffs Fail to Plead Actual Damages.

A CFDPA claim also requires that "the deceptive or unfair act caused [the plaintiff] to suffer actual damages, meaning pecuniary loss." *Kurowski*, 659 F. Supp. 3d at 941–42 (citation omitted). "The failure to allege specific economic damages precludes a claim brought under the

Consumer Fraud Act." *Flores v. Aon Corp.*, 2023 IL App (1st) 230140, ¶ 41. Plaintiffs allege loss of privacy, erosion of the confidential nature of the insurer-insured relationship, that Allstate benefitted without sharing that benefit, loss of the benefit of the bargain, decreased value of information, and increased risk of harm. Compl. ¶ 217.

Loss of privacy does not establish CFDPA damages. *See Khorloo v. John C. Heath Att'y at L., PLLC*, No. 18-cv-01778, 2020 WL 1530735, at *2 (N.D. Ill. Mar. 31, 2020) ("[T]he Court could not locate any Illinois case law suggesting that privacy violations . . . provide a basis for actual damages under the [CFDPA].").

The erosion of the insurer-insured relationship and increased risk of harm are speculative, not the actual, pecuniary loss CFDPA requires. *See Kurowski*, 683 F. Supp. 3d at 846. Diminished value of personal information is also insufficient. *See id.*; *Hannant*, 2025 WL 2413894, at *9 (finding no actual damages for lost value because "[p]laintiff does not allege that she ever sought to sell her own information"). Indeed, Plaintiffs allege they never intended to sell the purportedly disclosed information. *See* Compl. ¶¶ 83, 93, 102, 110, 120, 129.

Plaintiffs' benefit-of-the-bargain theory also fails. *See Kurowski*, 683 F. Supp. 3d at 846 ("[T]he Seventh Circuit has repeatedly rejected the benefit of the bargain theory of damages for non-products liability claims such as this one."). And allegations that Allstate benefitted from the disclosure of confidential information without sharing that benefit are insufficient. *See Deaconess*, 2025 WL 2771415, at *4 (lost profits from sharing personal information insufficient because there was no profit-sharing agreement). Because Plaintiffs fail to plead actual damages, Count IV should be dismissed.

## V. Plaintiffs Fail to State a Claim Under the California Invasion of Privacy Act.

Counts V–VII allege violations of the California Invasion of Privacy Act ("CIPA"), specifically Cal. Pen. Code § 631 (Count V), § 632 (Count VI), and § 638.51 *et seq*. (Count VII). Each of these claims fails.

### A. Plaintiffs' Claim Under Cal. Pen. Code § 631 Fails.

In Count V, Plaintiffs allege that Allstate violated Cal. Penal Code § 631(a) by using tracking technologies on the Website to unlawfully intercept, record, and disclose users' communications without consent. Section 631(a) creates liability in four ways:

> (1) where a person "by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument";
>
> (2) where a person "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit";
>
> (3) where a person "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained"; and
>
> (4) where a person "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above."

*Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897 (N.D. Cal. 2023) (quoting § 631).

As to the first three bases, the claims fail because Allstate was a party to the communications. *See Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 744 (N.D. Cal. 2023) ("[I]t is established that a party to the communication cannot be liable for recording its own conversations under § 631(a)."); *see also Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (holding that only the fourth clause of section 631(a) could create indirect liability for a party that was the "intended recipient of plaintiff's communication").

Section 631(a)(1) also applies only to telephone communications. *See What If Holdings, LLC*, 2022 WL 17869275, at *2 ("the first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the internet"); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 825–26 (N.D. Cal. 2020) ("[t]he first clause expressly requires that the unauthorized 'connection' be made with 'any telegraph or telephone wire, line, cable, or instrument'" (citation omitted)). Plaintiffs allege no telephonic wiretapping, so this claim fails.

Moreover, Section 631(a)(2) "only imputes liability when the defendant reads, or attempts to read, a communication that is 'in transit.'" *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1136 (E.D. Cal. 2021). Even brief storage removes a communication from "in transit" status. *See Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1152 (C.D. Cal. 2007). Plaintiffs must allege that "the third party listens to a communication 'while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state'" and must demonstrate "a party intercepted the communication during its transmission, rather than once it was placed in electronic storage." *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1125 (C.D. Cal. 2024) (citation omitted).[3]

Plaintiffs conclude that Allstate used a recording device to record communications "in transit" and transmitted them to third parties. *See* Compl. ¶ 229. But Allstate cannot be liable for intercepting communications in transit to which it was a party. *See Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1107 (C.D. Cal. 2023). And Plaintiffs claim only that trackers transmitted users'

[3] Two Plaintiffs allege that they reside in California, but do not allege that they input the purported information into the Website *while in California*, which is another ground for dismissal. *Heiting*, 728 F. Supp. 3d at 1125 (dismissing Section 631(a)(2) claim where plaintiff failed to allege that messages were received or sent within California).

actions to third parties "alongside and contemporaneously with the user initiating the communication." Compl. ¶ 232. Such conclusory allegations are insufficient. *See Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1084 (C.D. Cal. 2023) (finding "bare allegations that 'the third party . . . secretly intercept[s] (during transmission and in real time)' is conclusory and does not allege specific facts as to how or when the interception takes place" (alterations in original) (citation omitted)). Critically, Plaintiffs fail to allege *when* interception occurred—during storage in cookies/trackers or contemporaneously. *See* Compl. ¶¶ 62–63. This failure is fatal.

Section 631(a)(3) "requires a violation of the first or second clauses." *See Heiting*, 728 F. Supp. 3d at 1126. Because Plaintiffs fail to plead violations of the first or second clauses, they cannot bring a derivative claim under the third.

Section 631(a)(4), the aiding and abetting provision, requires an adequately alleged underlying predicate violation by third parties. *See B.K. v. Desert Care Network*, No. 2:23-cv-05021 SPG (PDX), 2024 WL 1343305, at *7 (C.D. Cal. Feb. 01, 2024) (dismissing Section 631(a)(4) claim because plaintiffs failed to allege third party who received user data from defendant committed underlying predicate violation). Plaintiffs fail to allege the Third Parties intentionally committed any predicate violation. They allege only that Allstate "aided, agreed, and conspired with Third Parties" and facilitated data interception. Compl. ¶¶ 230, 233–35. Plaintiffs claim Allstate had "full control" of the trackers and cookies but fail to allege any Third Party knew Plaintiffs did not consent to the use of tracking technologies. Plaintiffs' claim under Section 631(a)(4) fails and Count V should be dismissed.

### B. Count VI - Plaintiffs' Claim Under Cal. Pen. Code § 632 Fails.

Plaintiffs allege Allstate violated CIPA § 632(a) by intentionally recording and eavesdropping on users' communications without consent using cookies and tracking technologies. Compl. ¶¶ 236–40. Section 632(a) prohibits "intentionally and without the consent

of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication." But "confidential communication" excludes circumstances where parties "may reasonably expect that the communication may be . . . recorded." CIPA § 632(c).

Internet communications generally do not give rise to a reasonable expectation of privacy because they are written communications that are, by their nature, recorded. *Boulton v. Community.com, Inc.*, No. 23-3145, 2025 WL 314813, at *2 (9th Cir. Jan. 28, 2025). Plaintiffs' claims stem from website use, and they admit the site disclosed information-sharing at the outset: "By visiting our website, you consent to our use of cookies and other tracking technologies as described in our privacy statement." Compl. ¶ 46. Users clicking "More Information" were told: "We collect personal information about users over time and across different websites when you use this website or service. We also have third party advertising partners that collect personal information this way. We use several common tracking tools to do this, including browser cookies, web beacons, and similar technologies." *Id.* ¶ 47. Plaintiffs cannot show a reasonable expectation of confidentiality. Moreover, the information Plaintiffs allege they shared—pages viewed, insurance type, names, location, zip code, vehicle ownership, IP address—is not information a reasonable consumer would expect to remain private when seeking insurance.

**C. Plaintiffs' Claim Under Cal. Pen. Code § 638.51 Fails.**

In Count VII, Plaintiffs allege Allstate violated CIPA § 638.51(a) by installing cookies and tracking technologies as unlawful "pen register" and "trap and trace" devices without a court order or valid consent. Compl. ¶¶ 241–53. But internet technologies are not "pen register" or "trap and trace" devices. *See Hughes v. Dave & Buster's Ent., Inc.*, No. 25STCV10250, 2025 WL 2996811, at *1 (Cal. Super. July 16, 2025) ("[T]he court is persuaded that the collection and taking information transmitted over the internet does not fit the definition of a 'pen register' or a 'trap

and trace device.'"); *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025) ("the legislative history of the CIPA suggests that 'pen register' and 'track and trace devices' refer to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, and not internet communications such as websites.").

Plaintiffs' § 638.51(a) claim is also incompatible with their Federal Wiretap Act claim. The Wiretap Act applies only to the interception of the *contents* of communications. 18 U.S.C. § 2510(4). In contrast, Section 638.51(a) applies only to non-content information—identifying or routing information—and expressly *excludes* "contents of a communication." Cal. Pen. Code § 638.50(c). These theories are mutually exclusive:

> If Defendant only collects information regarding the "metadata" of the communication, Plaintiff's right to privacy is not invaded because he has no expectation of privacy as to that type of data (e.g., his IP address or general geographic location). If Defendant instead collects content information from communication between the parties . . . then the TikTok software is not a trap and trace device and § 638.50 does not apply.

*Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473-NW, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025); *see also Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 852 (N.D. Cal. 2025).

Plaintiffs repeatedly allege that Allstate's tracking technologies captured the substance of their communications, including information they shared directly with Allstate through the Website. *See* Compl. ¶¶ 84, 94, 103, 111, 121, 130. If true, the technologies cannot constitute trap and trace devices under § 638.50(c). And if they captured only routing or identifying information, Plaintiffs cannot state a Wiretap Act claim because there is no privacy expectation in routing or identifying information. *See Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal.

2020) ("there is no legally protected privacy interest in IP addresses"). Because these theories are mutually exclusive, the § 638.51(a) claim fails.

## VI. Plaintiffs Fail to State a Claim Under the California Unfair Competition Law.

In Count VIII, Plaintiffs allege Allstate violated the California Unfair Competition Law ("UCL") by making representations in its cookie banner and privacy policy and then disclosing Plaintiffs' information. Compl. ¶¶ 256–57. Plaintiffs allege Allstate misrepresented that its services had characteristics, uses, or benefits they did not have, and that services were of a particular standard when they were not. *Id.* ¶ 257.

UCL standing requires "lost money or property," meaning the plaintiff must "demonstrate some form of economic injury." *Griffith v. TikTok*, Inc., 697 F. Supp. 3d 963, 976 (C.D. Cal. 2023) (citation omitted). This "standing" inquiry is "substantially more stringent than federal standing under Article III." *In re TikTok, Inc. In-App Browser Priv. Litig.*, No. 24 C 2110, 2024 WL 4367849, at *17 (N.D. Ill. Oct. 1, 2024). Plaintiffs claim damages for the "loss of money and property" based only on conclusory allegations that companies will pay for the information and Allstate took money or property by collecting and disclosing the personal information to third parties, resulting in the loss of value of their personal information. Compl. ¶¶ 262–63.

These allegations are insufficient because Plaintiffs have not alleged they could have sold the information, that they attempted to sell it, or that they are precluded from selling it now. *See Griffith*, 697 F. Supp. 3d at 977 (rejecting UCL claim because plaintiff did not allege "specific facts showing that she could have sold the limited data collected . . . that she has ever attempted or intended to sell her data, or that Defendants' collection of that data . . . impeded her ability to sell her data").[4] Indeed, Plaintiffs allege they never intended to sell the information.

---

[4] *See also Hazel v. Prudential Fin., Inc.*, No. 22-cv-07465-CRB, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) ("just because Plaintiffs' data is valuable in the abstract, and because

Plaintiffs' allegation that Allstate took their money or property by collecting and disclosing information is also insufficient. *See In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011) ("[P]ersonal information does not constitute property for purposes of a UCL claim.") Because Plaintiffs fail to allege lost money or property, Count VIII should be dismissed.

**VII. Plaintiffs Fail to State a Claim for Breach of Contract.**

Plaintiffs contend that Allstate's representations regarding cookies and tracking technologies, including the cookie banner, constitute a contract that Allstate breached. Compl. ¶ 267. Plaintiffs do not allege monetary damages, instead referencing "actual losses and damages as described in detail above." *Id.* ¶ 270. But a contract requires consideration—"the 'bargained-for exchange of promises or performances, and may consist of a promise, an act or a forbearance.'" *Dugas-Filippi v. JP Morgan Chase, N.A.*, 66 F. Supp. 3d 1079, 1088 (N.D. Ill. 2014) (citations omitted). In other words, "the promisor receives some benefit or the promisee suffers detriment." *LKQ Corp. v. Thrasher*, 785 F. Supp. 2d 737, 742 (N.D. Ill. 2011) (citation omitted).

Plaintiffs allege Allstate promised not to use cookies or tracking technology, and in exchange Plaintiffs continued using the Website. Compl. ¶ 267. This is insufficient to establish any benefit to Allstate (Plaintiffs do not clearly allege they purchased Allstate insurance) or any detriment to Plaintiffs from using a website. Moreover, any contract would be illusory because Plaintiffs could stop using the Website at any point, and Allstate could not compel Plaintiffs to continue using it or sue them for stopping. *See Preferred Enteral Sys., Inc. v. Cent. Home, Inc.*, 277 Ill. App. 3d 414, 420 (1st Dist. 1995) ("An illusory promise is a statement that is in the form

---

ActiveProspect might have made money from it, does not mean that Plaintiffs have 'lost money or property' as a result" (citation omitted)); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) (dismissing UCL claim because "plaintiffs do not plausibly allege that they intended to sell their non-disclosed personal information to someone else").

of a promise, but it imposes no obligation upon the maker of the statement because it lacks specific terms that would be essential to an undertaking and enforceability.").

To state a breach of contract claim, Plaintiffs must also plead actual damages that are "pecuniary [in] nature; emotional, reputational, and other non-quantifiable damages are insufficient." *Deaconess*, 2025 WL 2771415, at *3. Emotional damages, loss of privacy, erosion of the insurer-insured relationship, and risk of harm do not support a contract claim. *See id.* at *4 ("Emotional damages, the risk of future harm, and the loss of privacy are non-starters because they are, by definition, not pecuniary in nature."). Diminution of personal information value is also "entirely speculative" and therefore insufficient to "sustain a contract action." *Id.* The allegations that Allstate took something of value also fail because Plaintiffs have not alleged they would have sold their information. And Plaintiffs' loss-of-benefit-of-the-bargain theory is insufficient. *See Hannant*, 2025 WL 2413894, at *15 (loss of benefit of bargain insufficient to show actual damages). Because Plaintiffs fail to plead actual damages, Count IX should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Consolidated Class Action Complaint should be dismissed with prejudice.

Dated: May 26, 2026

Respectfully submitted,

**THE ALLSTATE CORPORATION**,

Defendant.

By: */s/ Matthew R. Barrett*
One of Its Attorneys

Jeffrey H. Fisher (*pro hac vice*)
**KILPATRICK TOWNSEND**
**& STOCKTON LLP**
1100 Peachtree Street NE Suite 2800
Atlanta, GA 30309
Telephone: (404)-685-6772
jfisher@ktslaw.com

Evan S. Nadel (*pro hac vice*)
**KILPATRICK TOWNSEND**
**& STOCKTON LLP**
3 Times Square
New York, NY 10036
Telephone: (212)-775-8862
enadel@ktslaw.com

Matthew R. Barrett
Nikita J. Desai
**KILPATRICK TOWNSEND**
**& STOCKTON LLP**
500 W. Madison, Suite 3700
Chicago, IL 60661
Telephone: (312)-606-3200
mbarrett@ktslaw.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 26, 2026, he caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

*/s/ Matthew R. Barrett*
Matthew R. Barrett