**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**MARCUS JOHNSON, ABRAHAM CHIU, CRYSTAL ALLEN, ANESSA GRAY, ZHICHENG ZHEN, AND KAREN ELIZABETH SIGURDSON**, on behalf of themselves all others similarly situated,

Plaintiffs,

v.

**THE ALLSTATE CORPORATION**,

Defendant.

Case No. 1:26-cv-2016

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

BACKGROUND ........ 2

LEGAL STANDARDS ........ 4

ARGUMENT ........ 5

A. Plaintiffs have standing to pursue their claims ........ 5

B. Allstate violated the Federal Wiretap Act ........ 8

C. Allstate violated the California Invasion of Privacy Act ........ 12

1. Plaintiffs have stated a claim for "aiding and abetting" ........ 12

2. Plaintiffs have stated a § 632 claim for eavesdropping ........ 15

3. Plaintiffs have stated a claim under § 638.51 ........ 16

D. Allstate violated California's Unfair Competition Law ........ 19

E. Allstate violated the Illinois Consumer Fraud and Deceptive Business Practices Act ........ 21

1. A violation of the Illinois Personal Information Protection Act constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act ........ 21

2. Plaintiffs have satisfied Rule 9(b) ........ 22

3. Plaintiffs have pled damages ........ 23

F. Allstate breached its contract with Plaintiffs ........ 23

CONCLUSION ........ 24

# TABLE OF AUTHORITIES

Cases

*Allison v. PHH Mortg.*,
No. 25-cv-05323, 2026 U.S. Dist. LEXIS 74570 (N.D. Cal. Mar. 27, 2026) .......................... 10

*Bank One Milwaukee v. Sanchez*,
336 Ill. App. 3d 319 (Ill. Ct. App. 2003) ................................................................ 21

*Bissessur v. Ind. Univ. Bd. of Trs.*,
581 F.3d 599 (7th Cir. 2009)................................................................................ 5

*Bonilla v. Ancestry.com Operations Inc.*,
574 F. Supp. 3d 582 (N.D. Ill. Dec. 7, 2021)............................................................ 21

*Bradley v. Google, Inc.*,
2006 WL 3798134 (N.D. Cal. Dec. 22, 2006)............................................................ 13

*Brown v. Google LLC*,
No. 20-cv-03664, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ........................................ 19

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. Aug. 7, 2023) ............................................... 16, 20, 21

*Brown v. Google, LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. March 12, 2021)....................................................... 9

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .................................................................... 20

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024)............................................................ 11

*Castillo v. Seagate Technology, LLC*,
No. 16-cv-01958, 2016 WL 9280242 (N.D. Cal. Sep. 14, 2016)......................................... 24

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) ...................................................................... 10

*Doe v. Deaconess Ill. Union Canty. Hosp., Inc.*,
3:24-CV-02284, 2025 U.S. Dist. LEXIS 192058, at *32 (S.D. Ill. Sept. 29, 2025)................. 10

*E.H. v. Meta Platforms, Inc.*,
No. 23-cv-04784, 2024 WL 557728 (N.D. Cal. Feb. 12, 2024)........................................... 20

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (Cal. 2002) ................................................................................ 15

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ..... 17

*Hannant v. Culbertson Mem'l Hosp. Found.*,
No. 4:24-cv-04164-SLD-RLH, 2026 U.S. Dist. LEXIS 57449 (C.D. Ill. Mar. 19, 2026) ..... 12

*Hartley v. Univ. of Chi. Med. Ctr.,*
*No.* 22 CV 5891*,* 2025 WL 2802317 (N.D. Ill. Oct. 1, 2025) ..... 9, 11

*Heiting v. FKA Distributing Co.*,
2025 WL 736594 (C.D. Cal. Feb. 3, 2025) ..... 17

*Hughes v. Dave & Buster's Ent., Inc.*,
No. 25STCV10250, 2025 WL 2996811 (Cal. Super. July 16, 2025) ..... 18

*In re Allstate & Arity Consumer Privacy Litig*.,
No. 25 CV 407, 2026 U.S. Dist. LEXIS 43200 (N.D. Ill. Mar. 3, 2026) ..... 7

*In re Anthem, Inc. Data Breach Litig.*,
No. 15-md-02617, 2016 WL 3029783 (N.D. Cal. May 27, 2016) ..... 19, 20

*In re Aqua Dots Prods. Liab. Litig*.,
654 F.3d 748 (7th Cir. 2011) ..... 8

*In re Experian Data Breach Litig*.,
No. 15-cv-1592, 2016 WL 7973595 (C.D. Cal. Dec. 29, 2016) ..... 24

*In re Facebook Privacy Litig*.,
572 F. App'x 494 (9th Cir. 2014) ..... 20, 24

*In re Google Location Hist. Litig*.,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) ..... 6

*In re Lenovo Adware Litig*.,
No. 15-md-02624, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ..... 13

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) ..... 17, 18, 19

*In re Meta Pixel Healthcare Litig*.,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ..... 15

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
613 F. Supp. 3d 1284 (S.D. Cal. 2020) ..... 24

*In re TikTok, Inc. In-App Browser Priv. Litig*.,
No. 24 CV 2110, 2024 U.S. Dist. LEXIS 178597 (N.D. Ill. Oct. 1, 2024) ..... 10

*In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*,
No. 16-md-02752, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) .......... 20

*Jarrell v. Adena Health Sys.*,
2:24-cv-00282, 2025 U.S. Dist. LEXIS 6169, at *7 (S.D. Ohio Jan. 13, 2025) .......... 12

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) .......... 12

*Jones v. Skullcandy, Inc.*,
No. 25-cv-1759, 2026 WL 699819 (S.D. Cal. Mar. 12, 2026) .......... 14, 15, 16

*Kane v. Univ. of Rochester*,
No. 23-cv-6027, 2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024) .......... 10

*Kharosthi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .......... 7, 8

*Khorloo v. John C. Heath Attorney at Law, PLLC*,
No. 18-cv-01778, 2020 WL 1530735 (N.D. Ill. Mar. 31, 2020) .......... 23

*Kirsten v. California Pizza Kitchen, Inc.*,
No. 21-cv-09578, 2022 WL 16894503 (C.D. Cal. July 29, 2022) .......... 24

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-10473, 2025 WL 1745726 (N.D. Cal. June 24, 2025) .......... 19

*Klein v. Facebook, Inc.*,
580 F. Supp. 3d 743 (N.D. Cal. 2022) .......... 21, 24

*Kurowski v. Rush Sys. for Health*,
22-cv-5380, 2024 U.S. Dist. LEXIS 126837, at *3 (N.D. Ill. July 18, 2024) .......... 5, 10

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 5

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .......... 12

*Mayer v. Midwest Physician Admin. Servs., LLC*,
No. 23-cv-3132, 2025 U.S. Dist. LEXIS 60486 (N.D. Ill. Mar. 31, 2025) .......... 10

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) .......... 6, 7

*Mekhail v. N. Mem'l Health Care*,
726 F.Supp.3d 916 (D. Minn. Mar. 28, 2024) .......... 10

*Mitchener v. CuriosityStream, Inc.*,
815 F. Supp. 3d 845 (N.D. Cal. 2025) .......... 19

*Moody v. C2 Educational Systems Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) .......... 17, 18

*Noel v. Hall*,
568 F.3d 743 (9th Cir. 2009) .......... 15

*Pearson v. Garrett-Evangelical Theological Seminary, Inc.*,
790 F. Supp. 2d 759 (N.D. Ill. 2011) .......... 4

*Planned Parenthood Federation of Am., Inc.*,
51 F. 4th 1125 (9th Cir. 2022) .......... 9

*Podraza v. Nourish, Inc.*,
No. 25-cv-50356, 2026 U.S. Dist. LEXIS 86073 (N.D. Ill. Apr. 20, 2026) .......... 9

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 8

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 12

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... 11

*Rivera v. Am. Honda Motor Co.*,
No. 1:22-cv-435, 2025 U.S. Dist. LEXIS 85003 (N.D. Ind. Mar. 29, 2024) .......... 8

*Rojas v. HSBC Card Servs. Inc.*,
20 Cal.App.5th 427 (2018) .......... 14

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 12, 13

*Sanchez v. Cars.com Inc.*,
2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025) .......... 18

*Sanchez v. Walmart Inc.*,
733 F. Supp. 3d 653 (N.D. Ill. May 13, 2024) .......... 22

*SEC v. Lipson*,
278 F.3d 656 (7th Cir. 2002) .......... 11

*Semien v. PubMatic, Inc*,
No. 25-cv-03164, 2026 WL 216333 (N.D. Cal. Jan. 27, 2026) .......... 14

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) .... 17

*Silha v. ACT, Inc.*,
807 F.3d 169 (7th Cir. 2015) .... 4

*Smith v. Rack Room Shoes, Inc.*,
No. 24-cv-06709, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) .... 9

*Smith v. Rack Room Shoes, Inc.*,
No. 24-cv-06709, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .... 16

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .... 15, 16

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .... 5

*Stein v. Edward-Elmhurst Health*,
No. 23-cv-14515, 2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025) .... 11

*Sussman v. Am. Broadcasting Co.*,
186 F. 3d 1200 (9th Cir. 1999) .... 9

*Swiatek v. CVS Pharmacy, Inc.*,
No. 23-cv-01523, 2024 WL 1328801 (N.D. Ill. Mar. 28, 2024) .... 23

*Tavernetti v. Superior Ct.*,
22 Cal. 3d 187 (Cal. 1978) .... 12

*Thakkar v. Ocwen Loan Servicing*,
No. 15-cv-10109, 2019 U.S. Dist. LEXIS 83250 (N.D. Ill. May 17, 2019) .... 6

*Thomas v. Walmart Inc.*,
720 F. Supp. 3d 650 (N.D. Ill. Mar. 11, 2024) .... 23

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) .... 5

*Wiley v. Universal Music Grp., Inc.*,
No. 25-cv-03095, 2025 LX 594493 (N.D. Cal. Dec. 17, 2025) .... 6

<u>Statutes</u>

815 ILCS 530/5 .... 22

815 ILCS 530/20 .... 21

Cal. Bus. & Prof. Code § 17200 .......... 19

Cal. Penal Code § 631 .......... 12, 13

Cal. Penal Code § 632 .......... 15

Cal. Penal Code § 638.50 .......... 16, 17

Cal. Penal Code § 638.51 .......... 18

## INTRODUCTION

In 2026, privacy is an endangered species. Especially online, as companies creep further into people's lives, seeking to track and monetize their every act and behavior. Hardly anyone can avoid it. Clicking a link on a product on one page will cause that product to follow the person across the internet, their devices, and apps. But as companies spread their webs across people's digital lives, they start crossing lines. One line is financial privacy, a bastion in which people expect confidentiality because that is what the law requires. And this case is about how Allstate Insurance invaded that bastion without consent, violating state and federal law across the country.

Allstate had no right to do what it did and every obligation to avoid doing it. Marketing itself as a "trusted" insurance provider, Allstate promised its customers they were in "Good Hands®" doing business with Allstate, including when they disclosed their "sensitive" financial data when they requested quotes, bought insurance, or filed claims. To that end, Allstate's website came with guarantees, presenting a privacy policy and "cookie banner" on its landing page, giving people the option to "reject" marketing and advertising cookies while preserving only those needed to operate the website. And like so many consumers who encounter these banners across the web, Plaintiffs rejected Allstate's marketing and advertising cookies, as they were sharing financial data on Allstate's website and wanted to maintain confidentiality. But unknown to them and consumers across the country, Allstate's cookie banner presented only an illusion of choice.

Because no matter what Plaintiffs and consumers chose, Allstate transferred the data needed to identify ***who*** they were and ***what*** they were doing on its website to third parties like Google and Meta for advertising purposes. As a result, every time Allstate's customers filed an insurance claim, Google and Meta knew. Every time a prospective Allstate customer entered their personal information on Allstate's website, Google and Meta knew. Google, Meta, and other third parties knew who Plaintiffs and the Class were and what they were doing. And this misconduct

not only violated state and federal law; it violated Allstate's own privacy policy and banner pronouncements, which promised its customers and website visitors that they could opt-out of third-party tracking.

Allstate's motion to dismiss does not deny these facts so much as it ignores them. It says its website only "may have" disclosed Plaintiffs' data to tech companies without Plaintiffs' permission, when Plaintiffs did not allege Allstate "may have" done anything. Plaintiffs' complaint shows Plaintiffs investigated Allstate's site to confirm their allegations—including by producing screenshots showing the trackers within its viewable site code. Within that code, Plaintiffs show that despite clicking "reject" on Allstate's cookie banner, Allstate sent data to Adobe, Google, and Meta, disclosing the data needed to identify Plaintiffs and what they were doing on Allstate's site. While Allstate may not find those privacy invasions "offensive," Plaintiffs do. Allstate promised them privacy while violating it in real time, offending not only Plaintiffs and consumers everywhere, but state and federal law.

Allstate cannot promise privacy, fail to deliver it, and escape all consequences. The Court should deny its motion for three reasons. *First*, Plaintiffs meet their pleading burden to establish their standing to sue under Article III. *Second*, Allstate's disclosures violated state and federal wiretap acts. *Third*, those disclosures also harmed Plaintiffs under tort and statutory principles, entitling them to sue for damages.

## BACKGROUND

Allstate offers insurance products, including car, home, and renters' policies to consumers in Illinois and nationwide. Doc. 18 ("Compl.") ¶¶ 19, 23. Facilitating its business online, Allstate encourages prospective and existing customers to use its website, www.allstate.com. *Id*. ¶ 24. When website users arrive on Allstate's website, prominent large text prompts them to "get a quote in the blink of an eye." *Id*. Below this text appears seven icons corresponding to the types of

insurance Defendant offers on its website: "Auto," "Home," "Renters," "Condo," "Motorcycle," "ATV/off-road," and "Term life." *Id*. Website visitors are prompted to "Select products to bundle & save" by selecting one or more of the seven icons. *Id*. They can then enter their zip codes and click "get a quote" for the insurance products they selected. *Id*.

To complete a quote, Allstate funnels the visitors through a website "flow," in which Allstate prompts visitors to enter their personal information, including everything from their names and addresses, to the insurance they need, what they need insured, and a variety of information related to the asset or assets the visitor is seeking to protect. *Id*. ¶ 25. Allstate's website also encourages existing customers to use the site to "File or track a[n insurance] claim" and to pay insurance premiums. *Id*. ¶ 26. Across the country, consumers like Plaintiffs transmitted their personal information to Allstate on its website, including their first and last names, the types of assets they owned and the corresponding insurance products they needed, their zip codes and locations, the fact that they have suffered a loss and need to file a corresponding claim, and the fact that they owed and paid premiums for insurance. *Id*. ¶¶ 24-29.

All the while as users interacted with Allstate's website, a banner persisted on every page unless and until the user interacted with it. *Id*. ¶ 46. The banner represented that visitors may "opt out of sharing your information for targeted advertising" by selecting a "Do not sell or share my personal information" button. *Id*. Allstate's privacy policy repeated this claim, explaining "[y]ou may opt-out of this sharing" by selecting "[o]pt out of targeted online advertising." *Id*. ¶ 48. But Allstate's banner and privacy policy did not work. *Id*. ¶¶ 28, 64. Rather than blocking tracking, Allstate allowed third and fourth parties uninvolved in providing insurance services to obtain customers' and prospective customers' personal and financial information without their authorization or consent. *Id*. ¶¶ 28, 64.

Allstate accomplished this through trackers that it knowingly configured and installed on its website. *Id*. ¶¶ 7, 45–51. The trackers collected and transmitted Plaintiffs' nonpublic sensitive and private information to unauthorized third parties, including Adobe, Meta/Facebook, Pinterest, Google, DoubleClick, Invoca, Acoustic, and YouTube, and others without consumers' knowledge or authorization. *Id*. ¶ 28. The disclosed information included the pages and content Plaintiffs viewed, Plaintiffs' first and last names, their seeking of car, home, or rental insurance, their location, including zip code and state, their ownership of a car, their ownership of a home or their status as a renter, their ownership of other assets needing insurance, and additional identifying information unique to Plaintiffs, including their IP addresses and unique identifying cookies set by third parties. *Id*. ¶¶ 84, 94, 103, 111, 121.

As a direct result of Allstate's surreptitious mishandling of their personal and financial information, Plaintiffs suffered numerous injuries, including invasion of privacy; monetary damages; receipt of inappropriate and unwanted advertisements; loss of the benefit of their bargain with Allstate; decreased value of Plaintiffs' personal and financial information; and an increased risk of harm resulting from the use and disclosure of Plaintiffs' assets, name, location, interest in insurance, and other disclosed information. *Id*. ¶¶ 87, 97, 106, 114, 124.

## LEGAL STANDARDS

Rule 12(b)(1) motions may raise either a facial or factual challenge to standing, but both challenge a plaintiff's ability to sue in federal court. *Silha v. ACT, Inc*., 807 F.3d 169, 173 (7th Cir. 2015). Facial challenges accept the complaint's allegations as true and draw all reasonable inferences in the plaintiff's favor. *Pearson v. Garrett-Evangelical Theological Seminary, Inc*., 790 F. Supp. 2d 759, 762 (N.D. Ill. 2011).

Like Rule 12(b)(1), a Rule 12(b)(6) motion requires the Court to "accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's

favor." *Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2024 U.S. Dist. LEXIS 126837, at *3 (N.D. Ill. July 18, 2024). To survive the motion, plaintiffs need only allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009). And that standard requires only plausibility, not certainty. *Id*.

## ARGUMENT

### A. Plaintiffs have standing to pursue their claims

Plaintiffs have standing because they allege Allstate disclosed their financial information without their consent, violating their privacy and establishing "concrete" harms. Standing requires Plaintiffs to establish a concrete injury, traceability, and redressability. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Here, Allstate attacks only the first element of standing: concrete injury. Doc. 32 ("Def.'s Mot.") at 4-7. To dispute concreteness exists here, Allstate contradicts its privacy promises. Its Privacy Statement recognizes Plaintiffs' "Privacy rights and choices" must be respected, including their choices to opt out from marketing and advertising-based tracking. Compl. ¶ 48, n. 5. But now that Plaintiffs have alleged Allstate violated those promises and rights, Allstate says its disclosures cannot have harmed Plaintiffs. Not so.

Under Article III, a "harm" or injury establishes standing if it constitutes "an invasion of a legally protected interest" that is "concrete and particularized" and not "conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). But a plaintiff's injuries need not be "tangible" to be concrete: "Various intangible harms can also be concrete[…] Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (emphasis added). And a plaintiff need not allege they, in fact, suffered a harm "traditionally recognized" under the law, as even an injury with a "close relationship" to a recognized harm will suffice under Article III. *Id*. at

2197 ("Central to assessing concreteness is whether the asserted harm has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts.") (internal citation and quotation omitted).

Allstate recognizes Plaintiffs have identified analogs for their standing claim, including privacy harms like a "public disclosure of private facts" and "privacy intrusion." Def.'s Mot. at 6. It only attacks whether the data disclosed here was "sensitive" or that its disclosure was "highly offensive." Id. at 5-6. But this argument misses the mark for two reasons.

*First*, presenting its customers with an option to reject trackers and then deploying those trackers anyway offends "reasonable" people. That is precisely what Allstate did here when it misrepresented what it would do with Plaintiffs' data and then disclosed their personal and financial information without their consent. *Thakkar v. Ocwen Loan Servicing*, No. 15-cv-10109, 2019 U.S. Dist. LEXIS 83250, (N.D. Ill. May 17, 2019) ("facts regarding a person's financial or medical life are inherently private"); *Garcia v. Blackhawk Network, Inc.*, No. 2:25-cv-07550-JLS-SSC, 2026 LX 188596, at *14 (C.D. Cal. Apr. 1, 2026) (same). As a number of courts hold, Allstate's deceit is "a kind of 'plus' factor" in determining whether an action is highly offensive. *Wiley v. Universal Music Grp., Inc.*, No. 25-cv-03095-PCP, 2025 LX 594493, at *13 (N.D. Cal. Dec. 17, 2025) (quoting *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021); *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1036 (N.D. Cal. 2019)). Indeed, some courts hold it is a ***determining*** factor at the pleading stage: "Given that plaintiffs have alleged both an invasion of their reasonable expectations of privacy and that this invasion was undertaken through deceptive conduct, plaintiffs have pleaded facts sufficient to preclude [dismissal]." *Wiley*, 2025 LX 594493, at *14; *Shah v. MyFitnessPal, Inc.*, No. 25-cv-04430-PCP, 2026 LX 43836, at *16 (N.D. Cal. Jan. 27, 2026) (same). That, combined with data like browsing history, user input data,

and demographics have been found to be enough to establish a "highly offensive" disclosure at the pleading stage. *Id*.

Plaintiffs' allegations establishing harm thus exceed those found in other cases. For example, when a user interacts with Allstate's website to obtain a quote on an insurance product and follows the series of screens that solicit personal information related to the relevant insurance product(s), Allstate's trackers disclose the visitor's IP address, device identifiers, and cookies that enable unique identification of specific visitors. *Id*. ¶¶ 31, 58, 60, 64. The trackers then reveal, among other data, the particular individual's physical location, which assets they own, whether they own or rent their home, their first name, their last name, and the specific insurance products in which they might be interested. *Id*. ¶ 65. That data, combined with Allstate's deception, establish harm that confers standing here.

*Second*, the Court need not decide this issue at the pleading stage. *Rodriguez v. ByteDance, Inc.*, No. 23 CV 4953, 2025 LX 123727, at *33 (N.D. Ill. Mar. 3, 2025). As this Court has held, whether a disclosure is "offensive" is not a determination it must make on a motion to dismiss: "Without further briefing from the parties on these issues, the Court is not prepared to hold, as a matter of law, that no reasonable person" would find the disclosure offensive. *Id*; *See also In re Allstate & Arity Consumer Privacy Litig*., No. 25 CV 407, 2026 U.S. Dist. LEXIS 43200, at *51 (N.D. Ill. Mar. 3, 2026) (denying motion to dismiss and holding: "Court cannot conclude at this stage that no reasonable person would consider the alleged conduct highly offensive"). As a result, even if the Court is inclined to agree with Allstate (and it should not), it should withhold its determination on this issue until after discovery.

In response, Allstate cites cases that cannot compare. The court in *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174 (N.D. Cal. 2025) found no privacy injury where the only data alleged

to have been disclosed was IP addresses and unspecified "browser and device data." *Id*. at 1179. That is not the case here considering Allstate disclosed the data needed to identify who visitors were and what they were doing on Allstate's site, with the disclosures extending beyond the IP addresses and device data and into the financial information they would necessarily provide in the course of purchasing insurance products. Likewise, *Popa v. Microsoft Corp*., 153 F.4th 784, 786 (9th Cir. 2025) fares no better for Allstate considering that case was browsing for pet supplies, not financial information. Asset information, financial information and location data—all of which are required in order to price and purchase the insurance products that Allstate sells—are all sensitive information and nothing like a pet store preference. Compl. ¶¶ 84, 94, 103, 111, 121, 130. Thus, neither case should impact the Court's analysis here.

*Last*, Allstate's claim that Plaintiffs' allegations they overpaid for insurance services due to Defendant's illegal disclosures fail because "Plaintiffs do not allege they could have bargained for lower prices by consenting to share information" is wrong. Mot. at 7. There is no authority for such a "bargaining" requirement. In the Seventh Circuit, a financial injury such as overpayment or diminished value suffices to establish standing. *Rivera v. Am. Honda Motor Co*., No. 1:22-CV-435, 2025 U.S. Dist. LEXIS 85003, at *8 (N.D. Ind. Mar. 29, 2024) (citing *In re Aqua Dots Prods. Liab. Litig*., 654 F.3d 748, 751 (7th Cir. 2011) ("The plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing").

As a result, the Court should deny Allstate's motion on this ground.

**B. Allstate violated the Federal Wiretap Act**

Allstate violated the Wiretap Act when it installed trackers without the consent of Plaintiffs and class members. While Allstate claims it could send Plaintiffs' data to third parties under the Wiretap Act's "one-party consent" exception, it misunderstands the exception to that exception.

Def.'s Mot. at 7-10. This is because Allstate's purpose in violating Plaintiffs' privacy was "tortious" and "criminal," and that conduct is never allowed under the Wiretap Act. The crime-tort exception, as it is known, forecloses consent as a defense "where 'the communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.'" *Brown v. Google, LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. March 12, 2021). In other words, even where all parties to a communication provide explicit and unambiguous consent, an interception remains actionable under the Wiretap Act "when done for the purpose of facilitating some further impropriety." *Planned Parenthood Federation of Am., Inc.*, 51 F. 4th 1125, 1135 (9th Cir. 2022) (internal quotations omitted). That analysis turns "not upon whether the interception itself violated another law," but "upon whether the purpose for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broadcasting Co.*, 186 F. 3d 1200, 1202 (9th Cir. 1999) (internal quotations omitted).

Courts in this District and across the country have found the "purpose" element is met whenever a defendant commits a wrongful act in addition to the wiretap violation, centering their reasoning on statutory and state tort law violations. *See Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709, 2025 WL 2210002, at *5 (N.D. Cal. Aug. 4, 2025) ("Rack Room's alleged disclosure and use of Plaintiffs' personally identifiable information for advertising, in contradiction the commitments it made in its privacy policy, can plausibly constitute a further invasion of privacy beyond the act of intercepting the information alone. Therefore, Rack Room's alleged purpose was tortious." (citations omitted)); *Podraza v. Nourish, Inc.*, No. 25-cv-50356, 2026 U.S. Dist. LEXIS 86073, at *18-19 (N.D. Ill. Apr. 20, 2026) (denying motion to dismiss Wiretap Act claims, holding the crime-tort exception applies); *Hartley v. Univ. of Chi. Med. Ctr., No.* 22 CV 5891*,* 2025 WL 2802317, at *9 (N.D. Ill. Oct. 1, 2025) (same). Courts have applied this reasoning in dozens of

consumer cases involving illicit tracking and data sharing, finding the "improper" purpose element satisfied when plaintiffs allege a defendant tracked them without consent.[1] At their core, those cases reason that the crime-tort exemption applies so long as the interception is intended to further an act separate and apart from the interception, which happens to be criminal or tortious. *Allstate & Arity*, 2026 U.S. Dist. LEXIS 43200, at *33.

In response, Allstate argues that its "purpose" was to create targeted online advertisements and enhanced marketing services, and that this is not criminal. Mot. at 9-10. But this argument has consistently failed in this District and throughout the country because even if defendant commits a crime or tort to make money—it is nevertheless still committing a crime or tort. *Podraza*, 2026 U.S. Dist. LEXIS 86073, at *13; *Mayer v. Midwest Physician Admin. Servs., LLC*, No. 23-cv-3132, 2025 U.S. Dist. LEXIS 60486, at *10-11 (N.D. Ill. Mar. 31, 2025). Indeed, "[m]any crimes and torts are motivated by a desire to make money, and 'it defies common sense that a clearly harmful act could escape liability as long as it was done for profit.'" *Kurowski*, 2024 LEXIS 126837, at *5 (quoting *Mekhail v. N. Mem'l Health Care*, 726 F.Supp.3d 916 at 928 n.4 (D. Minn. Mar. 28, 2024)). By analogy, if a defendant blackmails a plaintiff after wiretapping them, the Wiretap Act does not exempt defendant's misconduct just because defendant was motivated to make money. Defendant was also motivated to blackmail plaintiff—a crime and tort existing separate from the wiretapping itself.

---

[1] *See e.g.*, *Allstate & Arity*, 2026 U.S. Dist. LEXIS 43200, at *33; *In re Consumer Vehicle Driving Data Tracking Collection*, 2026 U.S. Dist. LEXIS 88272, at *51; *Allison v. PHH Mortg.,* No. 25-cv-05323, 2026 U.S. Dist. LEXIS 74570, at *32 (N.D. Cal. Mar. 27, 2026); *Doe v. Deaconess Ill. Union Cnty. Hosp., Inc.,* No. 3:24-CV-02284, 2025 U.S. Dist. LEXIS 192058, at *32 (S.D. Ill. Sept. 29, 2025); *In re TikTok, Inc. In-App Browser Priv. Litig*., No. 24 C 2110, 2024 U.S. Dist. LEXIS 178597, at *39 (N.D. Ill. Oct. 1, 2024); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 381 (S.D.N.Y. 2024); *Kane v. Univ. of Rochester*, 23-CV-6027, 2024 U.S. Dist. LEXIS 48515, at *23 (W.D.N.Y. Mar. 19, 2024).

Allstate is thus contradicting the statute and caselaw, which require only that the interception was done with "the purpose of facilitating some further impropriety"—*i.e.*, the purpose of committing the relevant crime or tort. *See Stein v. Edward-Elmhurst Health,* No. 23-cv-14515, 2025 U.S. Dist. LEXIS 31273, at *16 (N.D. Ill. Feb. 21, 2025) ("The existence of a financial motivation (on the one hand) and a criminal or tortious motivation (on the other hand) are not mutually exclusive. After all, many crimes and torts are money-makers. Crime pays (until it doesn't), and lots of torts are good for the bottom line, too."). In other words, that self-serving pecuniary motives may have existed for committing the crime or tort does not make them any less a crime or tort.

This is not to mention that nothing in section 2511(2)(d) requires that a party act with the ***sole*** purpose of committing the underlying crime or tort. Thus, even if the Court views Allstate's "purpose" in employing the trackers as, for example, improving its advertising outcomes and profit margins, that does not mean that Allstate did not also consciously desire to make unauthorized disclosures of Plaintiffs' sensitive data. This is because "[t]he existence of [a] legitimate purpose [does] not sanitize the illegitimate one." *SEC v. Lipson*, 278 F.3d 656, 661 (7th Cir. 2002), *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *4 (W.D. Wash. Nov. 14, 2024) (declining to adopt a "bright-line rule insulating financial motives from the crime-tort exception"). Indeed, "a tort and seeking a profit are not mutually exclusive (if anything, the latter is often the reason for the former)." *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1091 (N.D. Cal. 2025).

Outliers to these courts' reasoning exist, but courts in the majority view have described them as just that, "outlier[s]." *Hartley*, 2025 WL 2802317, at *9. And even if the Court entertains Allstate's logic—that Plaintiffs must allege an independent act in addition to a violation—Plaintiffs have established that here, as Allstate intercepted *and* disclosed the data at issue to the Third

Parties. *Jarrell v. Adena Health Sys*., No. 2:24-cv-00282, 2025 U.S. Dist. LEXIS 6169, at *7 (S.D. Ohio Jan. 13, 2025) (a violation occurs "not from the mere interception of Plaintiff's clicks and search terms, but from the *disclosure* of that Biddle material to third parties" (emphases in original)); *Hannant v. Culbertson Mem'l Hosp. Found.,* No. 4:24-cv-04164-SLD-RLH, 2026 U.S. Dist. LEXIS 57449, at *18-20 (C.D. Ill. Mar. 19, 2026). As a result, the Court should deny Allstate's motion on this ground.

### C. Allstate violated the California Invasion of Privacy Act

#### 1. Plaintiffs have stated a claim for "aiding and abetting"

Courts have routinely found that misconduct like Allstate's violates CIPA. *See, e.g.*, *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (sustaining violation of § 631(a) because the incorporated tracking technology was the equivalent of allowing "an outsider to tap his telephone or listen in on the call"); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 521 (C.D. Cal. 2021) (denying motion to dismiss § 631(a) claim where Nike shared its communications with plaintiff to another party). Relevant here, CIPA § 631(a) establishes liability for any person who "aids, agrees with, employs, or conspires with" another to violate the CIPA. Cal. Penal Code § 631(a) (bracketed numbers and emphasis added).[2] This statute must be read broadly. *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications."). *Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google,*

[2] California courts interpret Section 631(a) of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a), as several different clauses covering "three distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (Cal. 1978).

*Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications").

Plaintiffs allege Allstate violated § 631(a) in three ways. *First*, Allstate intentionally embedded the third-party trackers on its website, enabling third party interception. Compl. ¶¶ 23–29, 35–44, 50–51. *See, e.g.*, *Saleh*, 562 F. Supp. 3d at 520-21 (finding allegations that defendant voluntarily embedding tracking software code on its website sufficient under § 631(a)); *In re Lenovo Adware Litig.*, No. 15-md-02624, 2016 WL 6277245, at *8 (N.D. Cal. Oct. 27, 2016) (same). *Second*, by incorporating this tracking technology, aided and abetted third parties in capturing Plaintiffs and Class Members' financial information. Compl. ¶¶ 58–65. *Third*, Allstate enabled third parties to intercept confidential and sensitive communications for its own commercial gain and advertisement optimization tactics. Compl. ¶¶58–65, 66–73. And without this misconduct, those third parties would not have had the means to intercept information from Allstate's website, let alone learn or use Plaintiffs' and Class Members' financial information.

Allstate does not actually dispute that it violated Clause 4 of § 631(a) (*see* Def.'s Mot. at 17) by aiding and abetting the third parties. Rather, its challenge to Plaintiffs' § 631(a) claim is premised entirely on the belief that Plaintiffs did not adequately plead those third parties were involved in wiretapping Plaintiffs. Def.'s Mot. at 19. But this lacks reason; Allstate could ***not*** have wiretapped Plaintiffs without third parties. Compl. ¶ 223. In particular, the third parties intercepted transmission of Plaintiffs' information (*Id.* ¶¶ 28; 58–63), which they then read and analyzed to establish a particular individual's location, which assets they owned, and other information, or otherwise data harvest (*Id.* ¶¶ 65; 66–73). The third parties did this willfully and without the consent of the website users because the third parties allowed their trackers to be configured even if a website user chose to opt out of cookies and trackers. Compl. *Id.* ¶¶ 62–63. *See Rojas v. HSBC*

*Card Servs. Inc*., 20 Cal.App.5th 427, 435 (2018) ("[T]he recording of a confidential conversation is intentional if . . . [it is done] with the purpose or desire of recording a confidential conversation, or with the knowledge to a substantial certainty that his use of the equipment will result in the recordation of a confidential conversation").

As with Clause 4, Allstate does not argue that the third parties did not violate Clauses 2 or 3 (*see* Def.'s Mot. at 17) of § 631(a). Rather, Allstate asserts that the third parties did not intercept Plaintiffs' communications while "in transit." Def.'s Mot. at 18. This argument, however, not only displays a misunderstanding of the technology and the law but contradicts Plaintiffs' allegations (which must be taken as true). The Complaint details that the network traffic establishes exactly *how* the information was intercepted "in transit." Compl. ¶¶ 62–64. Indeed, given the way that website form submission functions, it would be virtually impossible for a third party to ***not*** receive the information during its transmission, as Allstate seems to suggest (Def.'s Mot. at 18).[3] These allegations are more than enough to plead Plaintiff's communications were intercepted in transit. *See, e.g., Jones v. Skullcandy, Inc.*, No. 25-cv-1759, 2026 WL 699819, at *17 (S.D. Cal. Mar. 12, 2026) ("in transit" capture sufficiently pled where "Plaintiff provides detailed explanations of how the Tracking Technologies collect Plaintiff's data in real time, including information about the pages the user views, [and] the items the user interacts with. . . ."); *Semien v. PubMatic, Inc*, No. 25-cv-03164, 2026 WL 216333, at *7-8 (N.D. Cal. Jan. 27, 2026) (finding sufficient allegations including detailed descriptions of how the software at issue works to collect URLs and other

[3] The Third Parties' conduct (as well as that of Allstate) was intentional and willful. Both Allstate and the Third Parties collect and continue to use Plaintiffs' and Class Members' Disclosed Information for commercial gain, *Rojas v. HSBC Card Servs. Inc*., 20 Cal.App.5th 427, 435 (2018) ("[T]he recording of a confidential conversation is intentional if . . . [it is done] with the purpose or desire of recording a confidential conversation, or with the knowledge to a substantial certainty that his use of the equipment will result in the recordation of a confidential conversation.").

information in real time). *Cf. Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009) (interception occurs "when the contents of a wire communication are captured or re-directed in any way."); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) ("[T]he Ninth Circuit has construed the term [intercept] according to its ordinary meaning as the 'act of acquiring, or coming into possession of[.]'"). [4]

2. Plaintiffs have stated a § 632 claim for eavesdropping

CIPA § 632(a) prohibits, "without the consent of all parties to a confidential communication," the use of "an electronic amplifying or recording device to eavesdrop upon or record the confidential communication." Cal. Penal Code § 632(a). "To state a claim under § 632, Plaintiff must show there was (1) an electronic recording of (2) a confidential communication and (3) all parties did not consent." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024) (citation omitted). Under § 632, a communication is confidential if "a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 777 (Cal. 2002).

Allstate does not dispute the electronic recording or lack-of-consent elements. Instead, it asserts that Plaintiffs' § 632 claim fails because internet communications generally do not give rise to a reasonable expectation of confidentiality—and cites to the cookie banner itself as proof that no reasonable expectation of privacy existed on its website. Def.'s Mot. at 19-20.

To start, determining whether Plaintiff has a reasonable expectation of privacy "is a 'fact-intensive inquiry' that is often too difficult to resolve at the pleadings stage." *Jones*, 2026 WL

---

[4] Allstate's assertion that Plaintiffs' claim should be dismissed for the independent reason that they did not input their personal information into the website while in California (Def.'s Mot. at 18 n.3) has been soundly rejected by other courts. *Jones*, 2026 WL 699819, at *19 ("Plaintiff is a California resident, and the underlying collection of data took place while Plaintiff was in California.").

699819, at *18; *see also YETI Coolers*, 754 F. Supp. 3d at 943 (quoting *Brown v. Google*, 685 F. Supp. 3d 909, 937 (N.D. Cal. Aug. 7, 2023)) (same). In any event, the cookie banner said nothing about Allstate sharing information with the third parties even after a website user opted out. Compl. ¶ 46. Indeed, a reasonable website user would see the button labeled "Do not sell or share my personal information" and believe that by clicking it, Allstate would not sell or share that website user's personal information. *Id*. Even if a user were to click on the "More Information" button, they would never be informed that Allstate would transmit their personal information to the Third Parties. *Id*. ¶¶ 47–48.

Together, Allstate's cookie banner, privacy policy, and associated "More information" popup create the illusion that Allstate is a responsible steward of visitors' private information, and that consumers have control over whether the information they share with Defendant will in turn be shared with third parties. *Id*. ¶ 49. Nothing more is needed at this point. *Jones*, 2026 WL 699819, at *18 ("At the pleading stage, the Court finds that Plaintiff has sufficiently alleged a reasonable expectation that the immense amount of personally identifiable and browsing data allegedly collected by the Tracking Technologies would not be shared with third parties." (citing *YETI Coolers*, 754 F. Supp. 3d at 943)); *see also Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025) (finding a reasonable expectation of privacy where the privacy policy said nothing about third parties collecting, storing, and analyzing a visitor's browsing and purchase history).

3. <u>Plaintiffs have stated a claim under § 638.51</u>

Section 638.51 prohibits the use of pen registers and trap and trace devices, which are "device[s] or process[es]" that record or capture "dialing, routing, addressing, or signaling information" from a "wire or electronic communication." Cal. Penal Code §§ 638.50(b)–(c);

638.51. To state a claim under § 638.51, a plaintiff must merely allege that a defendant installed and used a pen register or trap and trace device without first obtaining a court order. *Id.* § 638.51.

Allstate does not contest that the tracking technologies were installed without a court order. Rather, it first asserts that the tracking technologies do not fall within the scope of what the statute considers a "pen register" or a "trap and trace" device. Def.'s Mot. at 20–21. This argument does not hold water, and the opinions that Allstate relies upon are inapposite.

As an initial matter, its argument finds no support in the statutory text. In particular, the CIPA definitions of "pen register" and "trap and trace device" refer only to "device[s] or ***process***[es]" that record or capture certain information from "a wire *or* ***electronic*** communication." Cal. Penal Code § 638.50(b) & (c) (emphases added). Courts "cannot ignore [this] expansive language in the California Legislature's chosen definition." *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023). This language "indicates courts should focus less on the form of the data collector and more on the result," and it was on this basis that *Greenley* rejected the argument that software cannot be a "pen register." *Id. See also, In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1151-52 (N.D. Cal. 2025) (Meta Pixel software installed on website a "pen register" under § 638.51); *Heiting v. FKA Distributing Co.*, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025) ("the Court concludes that the challenged software does fall within the ambit of section 638.50(c)."); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928 (N.D. Cal. 2024) (plaintiffs plausibly alleged that website software trackers "operate as a 'process' under the meaning of the statute."); *Moody v. C2 Educational Systems Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024)

("Plaintiff's allegations that the TikTok Software is embedded in the Website and collects information from visitors plausibly fall within the scope of §§ 638.50 and 638.51.").[5]

Next, Allstate asserts that Plaintiffs' § 638.51(a) claim is incompatible with their Federal Wiretap Act claim, because the Wiretap Act only applies to the contents of communications while § 638.51(a) applies only to non-content information. Def.'s Mot. at 21. This argument is based on a flawed interpretation of § 638.51. *Meta Pixel Tax Filing Cases* squarely addressed the same argument Allstate makes here and explained that the statutory language upon which it rests—the phrase "but not the contents of a communication" in § 638.50—is ambiguous. 793 F. Supp. 3d at 1153 ("The relevant statutory language is ambiguous"). The court explained that in light of this ambiguity, it would look to the legislature's intent to "effectuate" the law's purpose. *Id*. In doing so it exposed the fallacy behind Allstate's argument: "Under [defendant's] interpretation of the statute, an entity could escape liability under CIPA's pen register provisions by combining the functionality of a wiretap with that of a pen register." *Id*. at 1153-54. And that would mean "[s]uch an entity could engage in the very conduct that CIPA proscribes—using a pen register without a court order—while escaping liability through a statutory loophole that is available only because that entity collects even more sensitive information (the content of Californians' communications) along with the information recorded by pen registers." *see also, Moody*, 742 F. Supp. 3d at 1077 ("Having found that the browser and device data plausibly fall within the scope of the statute, the Court need not determine whether the form data also falls within the scope of the statute, as even

---

[5] Allstate cites two opinions, neither of which support its argument. *Hughes v. Dave & Buster's Ent., Inc.*, No. 25STCV10250, 2025 WL 2996811, at *1 (Cal. Super. July 16, 2025) looks to the legislative history of CIPA, rather than taking the statutory language at face value, unlike *Greenly, Meta Pixel Tax*, and *Moody*. Indeed, the *Hughes* court openly acknowledged those decisions, making it an outlier on this point of law. *Sanchez v. Cars.com Inc.*, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025) likewise looks to the legislative history of CIPA, making it an outlier along with *Hughes*.

if the form data did constitute "contents" beyond the scope of §§ 638.50 and 638.51, a defendant may not dismiss only a portion of a claim under Rule 12(b)(6)."). Allstate's argument should be rejected for the same reasons here.[6]

**D. Allstate violated California's Unfair Competition Law**

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Again, Allstate does not challenge the actual merits of Plaintiffs' claims. Def.'s Mot. at 22–23. Rather, it asserts that Plaintiffs did not properly plead damages. *Id*.

To show "that they have lost money or property, Plaintiffs must demonstrate some form of economic injury, which is itself a classic form of injury in fact." *Brown v. Google LLC*, No. 20-cv-03664, 2021 WL 6064009, at *15 (N.D. Cal. Dec. 22, 2021) (cleaned up). Here, Plaintiffs allege that they were injured when, inconsistent with the representations in the Cookie Banner, Allstate wrongfully misused and divulged their Disclosed Information (including for marketing without their consent). Compl. ¶¶ 28–29, 45-51, 66–73, 256–57. These actions subjected Plaintiffs Johnson, Chiu, Zhen, and Sigurdson to disclosure of their confidential information they disclosed to Allstate (*Id*. ¶¶ 80, 90, 117, 127), Plaintiffs' loss of benefit of the bargain and diminution in value of their information. *Id*. ¶¶ 87, 97, 124, 133. Recent caselaw confirms damages like these constitute injury for purposes of a UCL claim. *See*, *e.g.*, *In re Anthem, Inc. Data Breach Litig.*, No. 15-md-

---

[6] Allstate's cited opinions are inapposite. *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-10473, 2025 WL 1745726 (N.D. Cal. June 24, 2025), was decided in the context of whether the plaintiff there had Article III standing. *Id*. at *3. Indeed, there the court expressly noted that "neither party discusses the distinction between information *about* a communication versus information *within* a communication" (*id*. at *5 (emphases added))—and accordingly the court was not confronted with the statutory ambiguity discussed by *Meta Pixel Tax Cases*. Likewise, the facts in *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845 (N.D. Cal. 2025) were substantially identical to those in *Kishnani*. *Id*. at 848-50. The *Mitchener* court made the exact same observation as in *Kishnani*—that "neither party discusses the distinction between information ***about*** a communication versus information ***within*** a communication" (*id*. at 852), and thus also did not confront the statutory ambiguity analyzed in *Meta Pixel Tax*.

02617, 2016 WL 3029783, at *14 (N.D. Cal. May 27, 2016) (holding that plaintiffs that could recover benefit of the bargain losses had alleged economic injury under the UCL); *E.H. v. Meta Platforms, Inc.*, No. 23-cv-04784, 2024 WL 557728, at *5 (N.D. Cal. Feb. 12, 2024) (finding that users "paid more for their services from [their medical provider] than they otherwise would have had they known about Meta's interception of their information.").

In addition, courts also recognize that plaintiffs suffer a loss of money under the UCL when they provide "valuable data" and "receive[] no money in return"—just as Plaintiffs lost valuable data here without any compensation. *See Brown v. Google, LLC*, 685 F. Supp. 3d 909, 942 (N.D. Cal. Aug. 7, 2023) ("Plaintiffs have shown that there is a market for their browsing data and Google's alleged surreptitious collection of the data inhibited plaintiffs' ability to participate in that market."); *see also Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) (finding plaintiffs who suffered a loss of their personal information suffered economic injury and had standing); *In re Facebook Privacy Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014) (concluding plaintiffs had plausibly alleged that they experienced harm when their personal information was disclosed in a data breach and lost its sales value); *In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*, No. 16-md-02752, 2017 WL 3727318, at *13 (N.D. Cal. Aug. 30, 2017) (holding that plaintiffs had adequately alleged injury in fact based on the loss of value of their personal information); *Anthem Data Breach*, 2016 WL 3029783, at *14 (plaintiffs plausibly alleged injury from the loss of value of their PII).

This is not to mention Allstate cannot argue this data lacks value when it tracked and disclosed that data *because* it has value—companies regularly purchase such data to target specific consumers, as happened here, or to refine their products. Compl. ¶¶ 66–73. A market exists for Plaintiffs' Disclosed Information, and "[n]umerous courts have recognized that plaintiffs who lose

personal information have suffered an economic injury." *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 803 (N.D. Cal. 2022). As in *Brown*, Plaintiffs cite studies and reports showing an active market for users' private data and the particularly high value to advertisers. Compl. ¶¶ 66-73. Accordingly, Plaintiffs' UCL claim must stand at this stage.

**E. Allstate violated the Illinois Consumer Fraud and Deceptive Business Practices Act**

To state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), Plaintiffs must allege that: (i) Defendant undertook a deceptive act or practice; (ii) Defendant intended Plaintiffs to rely on the deception; (iii) the deception occurred in the course of trade and commerce; (iv) actual damage to Plaintiffs occurred; and (v) the damage complained of was proximately caused by the deception. *See, e.g.*, *Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 3d 582, 595 (N.D. Ill. Dec. 7, 2021). Further, the ICFA "is to be liberally construed to eradicate all forms of unfair or deceptive practices." *Bank One Milwaukee v. Sanchez*, 336 Ill. App. 3d 319, 323 (Ill. Ct. App. 2003).

1. <u>A violation of the Illinois Personal Information Protection Act constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act</u>

The Illinois Personal Information Protection Act ("IPIPA") provides that a violation of that statute constitutes an unlawful practice under the ICFA. *See* 815 ILCS 530/20. Allstate argues that IPIPA was not violated because the data it collected and disclosed is not protected by IPIPA. Def.'s Mot. at 14-15.

Allstate concedes that Plaintiffs described how they input their names and car/home ownership insurance products sought into the website. Def.'s Mot. at 15; *see also* ¶¶84, 94, 103, 111, 121, 130. It then asserts that this is not "personal information" within the scope of IPIPA, but this is incorrect. This is because under IPIPA, "personal information" is defined to include an individual's first and last name, along with his or her "Social Security number" "Driver's license

number or State identification card number" or "account number[s]." 815 ILCS 530/5. Allstate, however, also publishes the information needed for car insurance and homeowner's insurance quotes on its website.[7] The information individuals are required to provide for car insurance include both social security numbers and driver's license numbers, while they are required to provide at least social security numbers for homeowner's insurance.[8] Allstate cannot credibly contend that an individual can refuse to provide this necessary identifying information to obtain quotes or to purchase these insurance products. At this stage, this information is more than sufficient to qualify as "personal information" under IPIPA.

2. <u>Plaintiffs have satisfied Rule 9(b)</u>

Allstate does not actually dispute that Plaintiffs pled that it engaged in deceptive acts or that it intended for Plaintiffs to rely on its deceptive acts. Def.'s Mot. at 15. Instead, it asserts that Plaintiffs did not plead those elements with particularity under Rule 9(b). Plaintiffs, however, readily satisfy Rule 9(b) for their deceptive practices claim. *Sanchez v. Walmart Inc.*, 733 F. Supp. 3d 653, 660 (N.D. Ill. May 13, 2024) (explaining that plaintiff must "plead with particularity the circumstances constituting fraud and identify the who, what, when, where, and how of the alleged fraud."). It was Allstate's (who) cookie banner on its website that contained misleading statements regarding its cookie and privacy practices (what, where, and how) (Compl. ¶¶ 45-50), to Plaintiffs at the relevant times (when) (*id*. 98, 104, 107, 112), that made Plaintiffs believe that their personal information would be protected, when it was not. Notably, Plaintiffs further allege that Allstate siphoned off their personal information to Facebook and other third parties for marketing and other

---

[7] https://www.allstate.com/resources/information-needed-for-insurance-quote.

[8] *Id*.

improper purposes without their consent—which is precisely what Allstate promised it would not do (falsity) (¶100, 103, 111). Nothing more is required at this stage.

3. Plaintiffs have pled damages

Allstate next claims Plaintiffs failed to allege actual monetary damages. Def.'s Mot. at 15-16. In so arguing, Defendant ignores Plaintiffs' allegations. Under the ICFA, actual damages include any economic loss, and Plaintiffs have alleged diminution of their personal information. Compl. ¶¶8, 106, 114, 217. Additionally, Plaintiffs have further alleged that, had they known their Disclosed Information would be transmitted to third parties without their consent, they would not have entered into transactions with Allstate and would not have provided that information in the first instance. *Id*. ¶¶105, 110, 209. These allegations are sufficient at the pleadings stage. *See Swiatek v. CVS Pharmacy, Inc.*, No. 23-cv-01523, 2024 WL 1328801, at *5-6 (N.D. Ill. Mar. 28, 2024) (collecting cases holding actual damages for ICFA purposes where plaintiffs alleged they would not have used the product or they were deprived of the benefit of the bargain); *Thomas v. Walmart Inc.*, 720 F. Supp. 3d 650, 665 (N.D. Ill. Mar. 11, 2024) (finding factual argument regarding the economic injury premature at the pleading stage).[9]

**F. Allstate breached its contract with Plaintiffs**

Allstate's arguments on breach of contract all fail. Def.'s Mot. at 23-24. *First*, there is mutual assent based on Allstate's representations (i.e., offers) regarding the safeguarding and non-

[9] The cases cited by Allstate do not change this result. In *Khorloo v. John C. Heath Attorney at Law, PLLC*, No. 18-cv-01778, 2020 WL 1530735 (N.D. Ill. Mar. 31, 2020), the privacy violation constituted the receipt of text messages, which the court found "by itself" does not provide a basis for actual damages. *Id*. at *2-3. That is not the case here, where Plaintiffs' confidential financial and personal information was disclosed to other third parties. *Kurowski* rejected the narrow argument that the plaintiff there "provided a less valuable service than it promised when it breached her privacy." 683 F. Supp. 3d at 846. That is not the same argument as here, where Plaintiffs allege they would not have entered into transactions with Allstate and would not have provided that information in the first instance. ¶¶105, 110, 209.

disclosure of Plaintiffs' Private Information, which Plaintiffs accepted by providing their Private Information in connection with Defendant's services. *See id.* ¶¶ 28–29, 43–45, 267 (representations in cookie banner that purport to allow the visitor to opt-out of third-party tracking). These representations establish mutual assent. *See In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1297 (S.D. Cal. 2020) (holding statements contained in "Notice of Privacy Practices" and "Patient Bill of Rights" were sufficient to form the basis of express contract claims).

*Second*, Plaintiffs allege consideration because Defendant promised to keep users' Private Information secure and protected. Compl. ¶ 136. *See Kirsten v. California Pizza Kitchen, Inc.*, No. 21-cv-09578, 2022 WL 16894503, at *5 (C.D. Cal. July 29, 2022) (explaining that "receipt of PII implies the recipient's assent to protect the PII sufficiently."); *Castillo v. Seagate Technology, LLC*, No. 16-cv-01958, 2016 WL 9280242, at *9 (N.D. Cal. Sep. 14, 2016) (recognizing that receipt of private information creates an implied contract to safeguard that information) (citing cases)).

*Finally*, Plaintiffs allege damages resulting from Defendant's conduct, including loss of value of their Disclosed Information (Compl. ¶¶ 66–73), which the Ninth Circuit held to be sufficient for a breach of contract claim. *In re Facebook Priv. Litig.*, 572 F. App'x 494. And the damages Plaintiffs have alleged are neither nominal nor speculative. *In re Experian Data Breach Litig.*, No. 15-cv-1592, 2016 WL 7973595, at *5 (C.D. Cal. Dec. 29, 2016) ("[A] growing number of federal courts have now recognized Loss of Value of PII as a viable damages theory."); *Klein*, 580 F. Supp. 3d at 804 ("lost information and attention has material value.").

## CONCLUSION

For the reasons above, the Court should deny Allstate's motion.

Respectfully Submitted,

*/s/ Brian Levin*

Brian Levin (N.D. Ill. Attorney No. 26392)
Brandon T. Grzandziel
**LEVIN LAW, P.A.**
2665 South Bayshore Drive, PH-2B
Miami, FL 33133
T: (305) 613-0318
brian@levinlawpa.com
brandon@levinlawpa.com

Raina C. Borrelli
Samuel J. Strauss
**STRAUSS BORRELLI PLLC**
980 N Michigan Ave., Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com
sam@straussborrelli.com

*Attorneys for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I, Brian Levin, hereby certify that on June 24, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATED this 24th day of June, 2026.

Respectfully submitted,

*/s/ Brian Levin*

Brian Levin (N.D. Ill. Attorney No. 26392)
**LEVIN LAW, P.A.**
2665 South Bayshore Drive, PH-2B
Miami, FL 33133
T: (305) 613-0318
brian@levinlawpa.com